ATLANTIC COUNTY CIRCUIT COURT.

REBECCA A. FAIR AND FREDERICK L. FAIR, PLAINTIFFS, v. ATLANTIC CITY HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Decided December 20, 1946.

For the plaintiffs, *David R. Brone.*

For the defendant, *Bolte, Miller & Repetto* (by *Harry Miller*).

BURLING, C. C. J. This is a motion to strike the complaint. For the purpose of this motion, the defendant admits the truth of all facts well pleaded in the complaint and all inferences of fact which can be legitimately drawn therefrom. The sufficiency of the complaint, however, must be determined from the facts therein properly alleged from which a legal duty and the liability for the violation thereof are deduced.

From the complaint, it appears that the defendant is a charitable institution and that the plaintiff Rebecca A. Fair

was admitted to the defendant's hospital for the purpose of receiving medical care and treatment and requested that she be placed in a private room in said hospital for treatment, medical and nursing attention commensurate with her needs, and alleges that the defendant failed to provide competent and efficient administrators, servants and agents to properly procure, inspect, provide, maintain and arrange suitable bedding, apparatus and equipment for the treatment of said plaintiff and for her comfort and convenience, and by reason of their incompetence and inefficiency which was known or should have been known to the defendant, placed faulty and improper equipment at the disposal of the plaintiff, namely a mattress too wide for the bed occupied by her and the arranging of a night cord for summoning a floor nurse in such a way that the cord could not be reached conveniently by the plaintiff, and as a result the plaintiff in using such faulty bedding, apparatus and equipment was caused to fall from the bed occupied by her and suffer the injuries therein set forth. She brings her action for resulting damages and the husband, Frederick L. Fair, sues *per quod*.

The objections to the complaint founded upon procedural defects subject to special demurrer are: 1—because the complaint is so framed as to embarrass and delay a fair trial, and 2—because the first count is *duplicitas*. They may be well grounded. However, the plaintiffs in their brief, assert:

"The matter *sub judice*, however, is founded and sounds in tort. Whether the duty imposed by law upon the defendant springs from contract, be it express or implied, is of no moment. The gravamen of the cause of action is the duty which the law imposes upon the defendant, the breach of which results in a sanction enforcible by action."

Accordingly immediate resort and disposition is made of the reason of the general demurrer, which reads as follows:

"3. Because neither of said counts discloses a good and sufficient legal cause of action.

"(a) In that the defendant is a charitable organization and the plaintiff, Rebecca A. Fair at the time alleged in the complaint was a beneficiary of the charity of the defendant."

The question of liability of a charitable institution to re-

spond in damages for negligence of its servants has been many times before the courts. Conflict exists among the courts of the several states concerning such liability. The subject has been the cause of prolific judicial opinion. It is one upon which there has been and is not only a conflict of decisions among the courts, but also a remarkable diversity of opinion among the courts which agree in their ultimate decision as to the reason or ground for so deciding. *Andrews* v. *Young Men's Christian Association of Des Moines (Supreme Court, Iowa,* 1939), 226 *Iowa* 374; 284 *N. W. Rep.* 186; *President; and Directors of Georgetown College* v. *Hughes (U. S. Cir. of Appeals, District of Columbia,* 1942), 76 *U. S. App. D. C.* 123; 130 *Fed. Rep.* (2d) 810; *Gregory* v. *Salem General Hospital (Supreme Court, Ore.,* 1944), 175 *Ore.* 464; 153 *Pac. Rep.* (2d) 837.

There are two rules: One is known as the "absolute or unqualified" immunity rule and the other is known as the "qualified" immunity rule. Various reasons are given by the courts in support of the respective rules applied by them. Among those reasons are "public policy" "trust fund theory," "waiver theory," "*respondeat superior* theory." The subject is discussed in 10 *Fletcher's Cyc. Corp. (Perm. ed.)* and among others in the following cases: *Roosen* v. *Peter Bent Brigham Hospital,* 235 *Mass.* 66; 126 *N. E. Rep.* 392; *Vermillon* v. *Women's College of Due West (Supreme Court, S. C.,* 1916), 104 *S. C.* 197; 88 *S. E. Rep.* 649; *Schumacher* v. *Evangelical Deaconess Society of Wisconsin,* 218 *Wis.* 169; 260 *N. W. Rep.* 476.

For some time the courts of England and of the United States have been in a state of divergency as to the reason for the rule. 14 *C. J. S., Charities* 544 *et seq.,* § 75. Fletcher in his work on Corporations (volume 10, permanent edition), paragraph 4923, page 574, says:

"Some courts, however, hold broadly that a patient in a hospital or other inmate of a charitable corporation cannot recover for the negligence of its employees or other servants on the ground that a charitable institution is not responsible to those who avail themselves of its benefits, for injury sustained through the negligence or torts of its managers, agents

and servants, irrespective of its due care in the selection of such agents and servants, the immunity being predicated squarely on the 'waiver' or 'assent theory' or on the doctrine of public policy; this, of course, is equivalent to extending absolute, unqualified immunity to charitable corporations in so far as beneficiaries or inmates are concerned."

And in paragraph 4927, at pages 589, *et seq.*, in the same volume, the author states:

"Many of the courts base their judgments, exempting charitable corporations from liability for tort, upon the so-called doctrine of public policy and give as a reason that such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, sick and needy, and that they should be encouraged and held exempt from liability for tort, and that to do otherwise would operate to discourage the charitable inclined, dissipate the assets of such institutions in damage suits, and ultimately destroy them."

The case of first impression upon the subject of charitable exemption from tort liability relating to a hospital in New Jersey is *D'Amato* v. *Orange Memorial Hospital (Court of Errors and Appeals,* 1925), 101 *N. J. L.* 61, 65; 127 *Atl. Rep.* 340, 341. It was held:

"In our opinion public policy requires that a charitable institution maintaining a hospital be held not liable for injuries resulting to patients through the negligence or carelessness of its physicians and nurses, even if the injured person were a pay patient—payment for board, medical services and nursing in such case going to the general fund to maintain the charity."

The court assigned no specific theory in support thereof but it is to be taken to mean that it would be contrary to the interests of society that funds dedicated to a charitable use be permitted to be diverted or diminished by the payment of judgments resulting from the torts of the servants or agents of those administering the charity.

Nor has the next following decision done so. *Boeckel* v. *Orange Memorial Hospital (Supreme Court,* 1932), 108 *N. J. L.* 453; 158 *Atl. Rep.* 832; affirmed in (*Court of*

*Errors and Appeals,* 1933), 110 *N. J. L.* 509; 166 *Atl. Rep.* 146.

But such a position is borne out in *Simmons* v. *Wiley M. E. Church* (*Court of Errors and Appeals,* 1933), 112 *N. J. L.* 129 (at *p.* 132); 170 *Atl. Rep.* 237, 238, where it is defined as follows:

"Now, it is quite within reason to declare the public policy forbids a charitable institution being held constantly to the danger of damages for untoward results in some of the continuous ministrations to the direct beneficiaries of its charitable contributions; but such a rule is not invoked with equal justice, nor indeed by virtue of any public requirement, in the case of tortious injuries to those outside of its benefits, neither seeking nor receiving the same. It may well be sound public policy to avoid a diversion of trust funds from the direct object of their charitable donor by forbidding their application to damages for the negligence of the charity's servants where the injured party participates in the charity's bounty, but no charitable organization, no matter how lofty in character the motive or purpose, should be permitted with impunity to set up and operate machinery and thereby injure by negligence those unconcerned in and unrelated to that which the donor brought into being or supports in operation."

And in *Kolb* v. *Monmouth Memorial Hospital* (*Court of Errors and Appeals,* 1935), 116 *N. J. L.* 118 (at *p.* 119); 182 *Atl. Rep.* 822, 823, the policy is summarized and defined as follows:

"In our state we have adopted and followed what we believe to be the majority view, *i. e.,* the public policy theory. Thus we deny the right of recovery on the part of those who have a valid claim against a charitable institution, based on actionable negligence, but who are either the recipients of the benefactions, or the beneficiaries of the charitable institution sought to be held liable; but we permit the right of recovery against charitable institutions, for their actionable negligence, on the part of 'those unconcerned in and unrelated to that which the donor brought into being and supports in its operation.' *Simmons* v. *Wiley Methodist Episcopal Church,* 112 *N. J. L.* 129; 170 *Atl. Rep.* 237."

Thus, the unqualified immunity rule was broken through so as to permit recovery by a third party. But the exemption from suit of a beneficiary is a positive and absolute rule in New Jersey.

Since the public policy has been fixed by judicial pronouncement, the rule must be respected and followed until the legislature or the appellate court decrees otherwise. *Hammond* v. *County of Monmouth* (*Supreme Court,* 1936), 117 *N. J. L.* 11 (at *p.* 12); 186 *Atl. Rep.* 452; *Kobylarz* v. *Mercer* (*Court of Errors and Appeals,* 1942), 130 *N. J. L.* 44 (at *p.* 47); 31 *Atl. Rep.* (*2d*) 208; *Gregory* v. *Salem General Hospital,* 175 *Ore.* 464; 153 *Pac. Rep.* (*2d*) 837 (at *p.* 845).

Despite this determined public policy by the highest court of New Jersey, the present proposition is advanced by the plaintiff and this court is asked to whittle away from that policy by the proposition that the alleged actionable negligence is administrative.

There is no merit in the plaintiff's contention. There cannot be any logical distinction between the tort feasors when all act under the charitable corporation. The corporation acts through its servants or agents—whether they be directors, trustees, officers, doctors, nurses or a hospital orderly. The distinction is not one of logic but one of policy.

In *Roosen* v. *Peter Bent Brigham Hospital* (*ante*), the court held that there was no distinction between the liability of the charity for the negligence of its subordinate servants and that of its managers and said:

"If a hospital is to be held responsible for negligent treatment of patients, there seems to us to be no sound ground for a distinction between the negligence of the managers of the hospital and the negligence of subordinate servants as a basis of liability. A sound ground for distinction between exoneration from liability for the negligence of managers and that of subordinate agents seems equally wanting. Since it is settled that there is no liability for negligence of the latter, it must follow that there is none for that of the former."

In *Ettlinger* v. *Trustees of Randolph-Macon College* (*U. S. Circuit Court of Appeals, 4th Circuit,* 1929), 31 *Fed. Rep.*

(2d) 869, an action was brought by a student of the defendant to recover damages for personal injuries sustained by him when the buildings of the defendant were destroyed by fire. The plaintiff attempted to distinguish the cases holding the charitable institutions immune from liability due to the negligence of its agents or servants to a beneficiary, on the ground that his injuries were caused not through the negligence of a minor employee, but through the negligence of the manager of the corporation itself in failing to maintain its buildings in a safe condition. The court, in refusing to accept this distinction and holding that the plaintiff was not entitled to recover, said:

"We do not think, however, that this is a valid distinction. If there had been negligence in the respects claimed, it would have been the negligence of those who were carrying on the charitable work in which the corporation was engaged; and we see no more reason for diverting the funds of the charity on account of their negligence than there would be if the negligence had been that of any minor employee. The exemption arises not from anything relating to the grade of agent or employee, but from the principle that the funds of a charity ought not be diverted from the purpose for which they have been given, to pay damages to a beneficiary on account of the wrongs or negligence of those who administer the charity."

In *Stearn* v. *Association of Bar*, 154 *Misc.* 71; 276 *N. Y. S.* 390, the plaintiff was injured by a fall when she stumbled over the marble sill of a doorway on the Bar Association premises when she was on such premises as a beneficiary. The court held that the Bar Association was not responsible on the theory that the negligence of the defendant was due to the acts of the administrative officers, and at *p.* 394 of 276 *N. Y. S.*, said:

"The public policy which forms the basis of rule should be as broad as the situations it is intended to cover. It is designed to protect charity from claims of litigation. As between the dispenser of public benevolence and unfortunate victim of negligence, the law has determined to protect the former at the expense of the latter. As a matter of public

policy, no distinction based upon logic or expediency can be made between administrative and non-administrative acts. A public policy, so explicitly enunciated, must be permitted to function in a vital manner to carry out the ends for which it was designed."

The complaint does not set forth a cause of action. The motion to strike the complaint is granted. Appropriate rule may be presented.