IDA C. ROSE, PLAINTIFF, v. RALEIGH FITKIN-PAUL MOR-
GAN MEMORIAL HOSPITAL-ANN MAY FOUNDATION,
DEFENDANT.

Decided May 10, 1947.

For the plaintiff, *Parsons, Labrecque, Canzona & Combs.*

For the defendant, *Durand, Ivins & Carton.*

KINKEAD, C. C. J. This case was tried before the court
without a jury on stipulation by the parties that a trial by
jury be waived and the matter heard and determined by the
court.

The case involves the right of a private nurse, caring for
a patient at the Fitkin Hospital, to recover damages from
the hospital for injuries sustained by her as the result of a
fall due to the alleged negligence of an employee of the
defendant-hospital.

The evidence shows that on December 7th, 1943, the plain-
tiff, a registered nurse, 52 years of age, was attending a
patient in the defendant-hospital. The plaintiff was privately
employed and personally paid by the patient. On the day in
question, she had gone into the kitchen to procure a meal for
her patient. On her way back to her patient, she was carrying

the patient's tray in front of her, when she was thrown by a pan which had been placed on the floor under a leaking pipe by a hospital employee.

The plaintiff's version of the accident was corroborated by other witnesses, one of whom was the hospital employee who had placed the pan under the leak.

On cross-examination, the plaintiff testified that she was one of a number of nurses who were registered at the hospital for service. She admitted that having been a graduate of the Ann May School of Nursing, which is the training school for nurses operated by the defendant-hospital, she obtained a preference granted to such graduates when nurses were desired at the hospital; and that this registry service was operated by the hospital as a matter of courtesy, and that she paid nothing for this service. Plaintiff also admitted that while attending patients at the hospital, she was permitted to obtain her meals at the hospital, which meals were paid for by the patient.

At the conclusion of the plaintiff's case, the defendant moved for a nonsuit on the ground that the plaintiff was a recipient of the benefactions of the defendant-hospital, or a beneficiary of the hospital, and that the hospital, being admittedly a charitable corporation, was not liable as such for the mere negligence of its servants. The defendant-hospital has subsequently stated through counsel that it does not propose to offer any testimony. Therefore, the court may grant the motion for a nonsuit; and if it does not, a verdict awarding damages to the plaintiff will be in order.

There is no uniformity among the courts of the several states concerning the liability of a charitable institution to respond in damages for negligence or its servants. Some states have adopted the rule of absolute or unqualified immunity so far as charitable institutions are concerned. The courts of New Jersey, on the other hand, have adopted the rule of qualified immunity.

In *D'Amato* v. *Orange Memorial Hospital,* 101 *N. J. L.* 61; 127 *Atl. Rep.* 340, the Court of Errors and Appeals held that a hospital patient was a beneficiary of the institution, and as such was not entitled to recover for the negligence of

the hospital's servants. The court made no distinction between a paying patient and a charity patient.

In *Boeckel* v. *Orange Memorial Hospital,* 108 *N. J. L.* 453; 158 *Atl. Rep.* 832, the rule as to the non-liability of hospitals to beneficiaries was extended by the Supreme Court to include as beneficiaries persons injured while visiting patients. At *p.* 456 of 108 *N. J. L.;* at *p.* 833 of 158 *Atl. Rep.,* the court held: "Accepting the principle, as applied to a charitable institution maintaining a hospital, that public policy denies recovery to a patient injured through the negligence of a nurse, we consider that the logic of the rule holds the same negation against those who, in visiting a patient, are injured from like cause." Verdicts in favor of the plaintiffs were set aside by the Supreme Court, and when the case was re-tried before Circuit Court Judge Lawrence without a jury, Judge Lawrence rendered a verdict in favor of the defendant. An appeal was taken and the Court of Errors and Appeals, in an opinion reported in 110 *N. J. L.* 509; 166 *Atl. Rep.* 146, unanimously affirmed the trial court, thereby approving the earlier ruling of the Supreme Court.

In *Simmons* v. *Wiley Methodist Episcopal Church,* 112 *N. J. L.* 129; 170 *Atl. Rep.* 237, the immunity of charitable institutions was restricted by our highest court. In that case, the plaintiffs were injured in a highway collision through the negligence of the servant of the defendant-church. The rule was laid down that a charitable institution is liable in damages for injuries sustained by a person on the public highway through the negligent operation of the charitable institution's truck by its servant, where the injured person was a stranger having no beneficial relation to the institution.

The court held, 112 *N. J. L.* (at *p.* 132); 170 *Atl. Rep.* (at *p.* 238):

"Now, it is quite within reason to declare that public policy forbids a charitable institution being held constantly to the danger of damages for untoward results in some of the continuous ministrations to the direct beneficiaries of its charitable contributions; but such a rule is not invoked with equal justice, nor indeed by virtue of any public requirement, in the case of tortious injuries to those outside of its benefits,

neither seeking nor receiving the same. It may well be sound public policy to avoid a diversion of trust funds from the direct object of their charitable donor by forbidding their application to damages for the negligence of the charity's servants where the injured party participates in the charity's bounty, but no charitable organization, no matter how lofty in character the motive or purpose, should be permitted with impunity to set up and operate machinery and thereby injure by negligence those unconcerned in and unrelated to that which the donor brought into being or supports in operation. To hold otherwise would be to acquiesce in the careless selection of servants, and in the carelessness of those selected, in the operation of automobile trucks on the public highway to the injury of entire strangers to the charity, a proposition repugnant to one's sense of justice."

In *Kolb* v. *Monmouth Memorial Hospital,* 116 *N. J. L.* 118; 182 *Atl. Rep.* 822, the immunity of charitable institutions was further limited. In that case, the plaintiff was a member of a first aid squad. The first aid ambulance, with the plaintiff and another, brought a patient to the Monmouth Memorial Hospital. Upon reaching the hospital, plaintiff entered through the emergency entrance to get the hospital stretcher to carry the patient into the hospital. It was while in the act of getting the stretcher that he fell and was injured through the negligence of the employees of the hospital. A verdict in favor of the plaintiff was unanimously affirmed by the Court of Errors and Appeals, which held, 176 *N. J. L.* (at *p.* 120); 182 *Atl. Rep.* (at *p.* 823):

"It obviously, therefore, becomes necessary to recur to the question of the relation of the plaintiff to the hospital at the time of the accident. What was his status? It is clear that he was not personally the recipient of the benefactions of the hospital. Was he, however, a beneficiary of its benefactions, or was he 'unconcerned in and unrelated to' the hospital and its operation? A beneficiary is defined as 'the recipient of another's bounty; one who received a benefit or advantage.' 7 *C. J.* 1133, 1134. Judicial construction and application of that term, in this class of cases, finds perfect expression in the Boeckel case.

"In the case at bar, the facts, on the point of the relation of the plaintiff to the hospital, are not in dispute. They are these: Plaintiff was a member of the first aid squad of the Oakhurst volunteer fire department. The organization owned, among other equipment, an ambulance to take care of emergency cases. In response to a call that one, Ross Clayton, of Deal, New Jersey, had to be taken to the defendant hospital, plaintiff, in company with a fellow member of the squad, drove to the Clayton home and transported him to the hospital. Upon reaching the hospital plaintiff entered through the emergency entrance, as he had done on some twenty-five or thirty other occasions, to get the hospital stretcher to carry the patient into the hospital. It was while there and in the act of getting this stretcher that he fell and sustained the injuries for which he sued. Plaintiff was not related to the patient; he had nothing to do with the arrangements for the patient's admission to the hospital; they were made by the members of the patient's family and his physician. There is not even a suggestion that plaintiff received any compensation, from either the patient, or the hospital, or his organization, for his services. Obviously, therefore, in transporting Clayton to the hospital plaintiff was neither the recipient nor the beneficiary of the hospital's benefactions. We are firmly of the opinion that plaintiff was, within the holding of our cases, 'unconcerned in and unrelated to' the hospital and its operation."

In *Bianchi* v. *South Park Presbyterian Church*, 123 *N. J. L.* 325; 8 *Atl. Rep.* (*2d*) 567, the church house of the defendant was used as a social center as well as for the administration of church affairs. The plaintiff belonged to a girl scout troop which held weekly meetings in the church house. While attending one of these meetings, the plaintiff was injured by reason of the negligence of the janitor in failing to illuminate the steps. The Court of Errors and Appeals affirmed a judgment of nonsuit upon the ground that the plaintiff, in using the church house as a member of the girl scout troop, was a beneficiary of the defendant's charity. The plaintiff was ruled to be a beneficiary.

In the instant case, the defendant-hospital contends that

the plaintiff must be deemed to be a beneficiary of the hospital's charity for a number of reasons, namely: She was a graduate of the defendant-hospital School of Nursing; she obtained all her employment as a nurse at the defendant institution; she was registered at the hospital for service, and by virtue of such registration, she received a preference because she was a Fitkin graduate; and she paid nothing for this registry service which was maintained as a courtesy service by the hospital.

I must hold to the contrary. The plaintiff, despite her familiarity with the hospital, and her almost constant employment as a nurse there, must nevertheless be deemed to be a stranger so far as the hospital's charity is concerned. It was not charity which prompted the defendant to train the plaintiff and others in the defendant's School of Nursing, but rather the realization that well-regulated hospitals require the services of competent nurses.

Nor was there any charitable intent in the defendant's operation of a registry system, free of charge to the plaintiff, whereby the plaintiff (as a graduate of the defendant's nursing school) obtained a preference when nurses were needed. The defendant well knew the qualifications and the competency of any graduates of its own school, and the hospital benefited generally when it could provide competent nurses to patients who requested them. It was probably expediency which motivated the operation of the registry system, but it certainly was not charity.

Hospitalization connotes much more than mere treatment at a hospital by a physician. In the case of those patients who possess the necessary means, it also conceives the care and remedial service which can only be administered by skilled and competent nurses.

Considering the definition of a beneficiary which was cited with approval in *Kolb* v. *Monmouth Memorial Hospital, supra,* namely, as being "the recipient of another's bounty; one who has received a benefit or advantage," it is clear that the defendant does not bestow any bounty on the plaintiff when it authorizes her to attend a hospital patient. The hospital merely permits her to earn a livelihood under circum-

stances which, as heretofore set forth, are *mutually advantageous and beneficial.*

I conclude that the plaintiff cannot be brought within the rule of exemption of charitable organizations, which has been approved in *D'Amato* v. *Orange Memorial Hospital, supra; Boeckel* v. *Orange Memorial Hospital, supra,* and *Bianchi* v. *South Park Presbyterian Church, supra,* and that she was not a recipient of the defendant's benefactions, but was to the contrary a stranger to the hospital's charity.

At the time of the happening of the accident, and under the circumstances surrounding the presence of the plaintiff in the hospital, I feel that the plaintiff was an invitee to whom the defendant owed the duty of using ordinary care to keep the hospital premises reasonably safe. The defendant having violated this duty must respond in damages to the plaintiff.

So far as the damages are concerned, it is undisputed that the plaintiff had a hospital bill of $316.52, medical expenses amounting to $224, and twelve weeks' loss of earnings at $42 per week, amounting to $504. The special damages of the plaintiff, therefore, amounted to $1,044.52. Her injuries, while not extremely severe, were quite painful, and in addition, she has sustained a three per cent. permanent disability. In my opinion, the plaintiff is entitled to an award of $2,500.

Judgment for that amount, therefore, will be entered in favor of the plaintiff, Ida C. Rose, and against the defendant, Raleigh Fitkin-Paul Morgan Memorial Hospital-Ann May Foundation.

*Postea* in accordance with this determination may be submitted to the court.