71 N.J. Super. 313 (1961)
177 A.2d 40
EDWIN L. MAYER, PLAINTIFF-RESPONDENT,
v.
FAIRLAWN JEWISH CENTER AND RANDALL CONSTRUCTION CO., INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided December 27, 1961.
*314 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. William R. Morrison argued the cause for appellant Fairlawn Jewish Center (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. James B. Emory argued the cause for appellant Randall Construction Co., Inc. (Mr. J. Chester Massinger, attorney; Mr. Emory, of counsel).
Mr. Morton Stavis argued the cause for respondent (Messrs. Gross and Stavis, attorneys; Mrs. Mabel L. Richardson, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
Defendants Fairlawn Jewish Center (hereinafter Center) and Randall Construction Co., Inc. (hereinafter Randall) appeal from a judgment entered in a negligence action in the Superior Court, Law Division, on the verdict of a jury which awarded damages in the sum of $10,000 to plaintiff for personal injuries sustained on November 16, 1958. Plaintiff was injured when he fell while on property, owned by Center, on which property certain new construction and renovation work was being *315 performed by Randall under contract with Center, to which contract reference is hereinafter made.
Although the respective defendants at trial vigorously contested the charge that they were negligent, neither defendant on appeal challenges the resolution of that issue by the jury. Center's appeal is based on the contention that it was entitled to the charitable immunity provided by L. 1958, c. 131, which, as it became effective July 22, 1958, and by its terms did not expire until June 30, 1959, was in effect at the time of the aforesaid accident. Randall, asserting that plaintiff "was guilty of contributory negligence as a matter of law," contends that the trial court erroneously denied its motion for dismissal made on that ground at the end of plaintiff's case. Center also appeals from the trial court's dismissal of its cross-claim against defendant Randall for the alleged breach of one of the provisions of the aforesaid contract for construction and renovation of Center property.
On the date of the accident plaintiff Edwin L. Mayer was employed as the Regional Director of the Development Corporation for Israel, a New York corporation engaged in the sale of bonds issued by the government of the State of Israel for the economic development of that country. In his official capacity plaintiff attended a dinner held at the Center on the evening of November 16, 1958, for the promotion of bond sales. Arriving at the Center about 7:30 P.M., plaintiff entered the building through the main entrance. About an hour later plaintiff decided to go outside to "get a breath of air." He walked to an exit where there were "swinging doors." The doorway was not the one through which he had entered the room, nor was it identified by an "exit" sign visible from the interior of the room as were other doorways. Beyond the swinging doors was a short hallway leading to the kitchens. Plaintiff testified that on entering the hallway he asked one of Center's employees where he might exit from the building. The employee indicated a single door at the *316 end of the hall. Plaintiff proceeded outside through that door, which was unlocked and which had a lighted "exit" sign above it, visible from the hallway. It was dark outside. Plaintiff testified that after taking "two," "three" or "four" steps, he turned to his left and fell into a stairwell, 9 to 11 feet in depth. He sustained substantial physical injury. The proofs established that there was no railing or other guard around the stairwell then under construction; the area was unlighted, and there were no warning signals or signs indicating the presence of the unfinished stairwell. On the date of the accident the stairwell and other portions of the Center property were under construction by Randall pursuant to the aforesaid contract between Center and Randall.
The president of Center testified that the Development Corporation, plaintiff's employer, was using Center's building free of charge pursuant to Center's offer. The Development Corporation made arrangements for the dinner and caused the tickets to be printed. The tickets were sold by lay leaders of the Center working under the supervision of the Development Corporation. The tickets were priced at $6 each. Plaintiff confirmed the fact that insofar as he knew "there was no direct charge" by Center for the use of its hall on the evening in question, but that he believed that out of each $6 dinner ticket charge, 50 cents went to Center, which arrangement was explained in Center's answers to interrogatories (received in evidence) as a payment from the caterer to Center "for a kitchen charge." Plaintiff further testified that the Development Corporation made the arrangements for the dinner "for the benefit of the Fair Lawn Jewish Committee, headed by lay leadership  the volunteers in the Jewish Center and community at large * * *; to benefit the State of Israel, but to involve the people, the Jewish people of Fair Lawn * * *." There is no doubt from the proofs that the sale of the bonds and the use of the hall therefor, represented a co-operative effort by Center and the Development Corporation *317 to achieve a common objective, and that plaintiff's status, as determined by the trial court, was that of an invitee on the premises of Center.

I.
We consider initially Randall's claim that plaintiff was guilty of contributory negligence as a matter of law. We find no error in the trial court's refusal to dismiss plaintiff's action on that ground. Appellant Randall stresses plaintiff's failure to leave the building through the same doorway which he used on entering. There was nothing in the proofs from which it might reasonably be concluded that he was required to do so. Moreover, his actions, on exiting from the building, definitely raised a jury question as to whether he was guilty of contributory negligence. In Seipel v. Sevek, 29 N.J. 593, 597 (1959), it was held that "unless the contributory negligence is a necessarily exclusive conclusion from the facts, there is no warrant for removal of the issue from the consideration of the jury." See also, Marty v. Erie R. Co., 62 N.J. Super. 458, 465-466 (App. Div. 1960), certif. denied 33 N.J. 387 (1960).
Under the evidence, the court would have been unjustified in holding that as a matter of law plaintiff should have foreseen the existence of the uncompleted and unguarded stairwell, of the presence of which, as above stated, there was no warning. Neither did the few steps he took in the dark, on leaving through the doorway which bore a lighted exit sign, and to which doorway he had been directed by a Center employee, constitute contributory negligence as a matter of law. We find no error in the trial court's refusal to grant Randall's motion for dismissal.

II.
We turn to Center's claim of immunity stemming from the statute in effect at the time of the happening of the *318 accident with which we are here concerned. The pertinent portions of the statute (with emphasis supplied as to those portions on which Center places chief reliance) are as follows:
"[Immunity; exceptions; liability of agents or servants.] No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence. [L. 1958, c. 131, § 1]

* * * * * * * *
[Article deemed remedial.] This act [article] shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes." (L. 1958, c. 131, § 4) (Emphasis added)
Center maintains that the effect of Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958), decided April 28, 1958, was to eliminate, without qualification, the then existing decisional law relating to charitable immunity. Center further maintains that the aforesaid statute, with specific reference to the above quoted phrase freeing the charitable organization from liability for injury suffered by any person who then was "a beneficiary, to whatever degree, of the works" of such organization, rendered it immune in the instant case.
On the contrary, plaintiff contends that the statutory enactment did no more than reinstate the substance of the former common-law immunity, that no enlargement thereof *319 was intended and that, therefore, the principles enunciated in Lindroth v. Christ Hospital, 21 N.J. 588 (1956), should be applied by us in resolving the instant appeal.
In Lindroth, the court held, at page 595:
"* * * Such test as our decisions supply for differentiating a beneficiary from a stranger leans heavily upon the element whether the suitor is one of the `direct recipients of the charity's beneficence, an acceptor of its benefactions,' whose mishap occurs in the course of `some of the continuous ministrations to the direct beneficiaries of its charitable contributions'; the public policy sought to be served by the immunity doctrine is said to be `to avoid a diversion of trust funds from the direct object of their charitable donor by forbidding their application to damages for the negligence of the charity's servants where the injured party participates in the charity's largesse,' Daniels v. Rahway Hospital, supra, 10 N.J. Misc., at pages 587, 588."
The trial court in the case at bar held that plaintiff was not a beneficiary of defendant Center under the above quoted statute. In reaching the aforesaid conclusion, the court relied in part on Lindroth, supra, and concurred in plaintiff's contention that the reasoning expressed in the opinion in that case was of aid in properly interpreting the concept of "beneficiary" as used in the pertinent statute above quoted. Although we are in accord with the trial court's holding that plaintiff was not a "beneficiary" under the statute and that Center is not immune from suit in the case at bar, we do not base our conclusion on Lindroth. We find no need to go beyond the language of the statute itself (L. 1958, c. 131, § 4), and to that extent agree with Center's aforesaid argument. We are in accord with Center's contention that Collopy, supra, eliminated the existing decisional law referable to the charitable immunity doctrine and that the aforesaid statute, in effect at the time of the happening of the accident, controls. However, we disagree with Center's claim that the statute immunizes defendant from plaintiff's suit. Center argues that it "was the direct result of the elimination of the common law theory of charitable immunity by our Supreme Court that the Legislature *320 of New Jersey, in order to protect charitable organizations, promptly passed" the aforesaid statute; that the statute's "content and meaning" are clear; that no "interpretation by the Court" is required; and that the trial judge erred in failing "to apply the plain meaning of the statute to the facts" of the case at bar.
Center, asserting that it was rightly determined by the trial court to be "a charitable organization" within the statutory description aforesaid (a determination unchallenged by plaintiff on appeal), contends that plaintiff was present at Center's building on the night of the accident under circumstances which constituted him a "beneficiary" of defendant. Center's counsel stresses the statutory designation of "a beneficiary, to whatever degree, of the works" (emphasis supplied) of a charitable organization as rendering Center immune from plaintiff's suit. Emphasizing the broad sweep of the italicized phrase, Center's brief asserts that "plaintiff, in furtherance of his own job and the aims of his own employment through his own co-employees, sought and accepted the donation of the use of" Center's "building for the purpose of selling State of Israel Bonds"; that he "arranged for" the speaker of the evening; "directed and supervised" the sale of the dinner tickets and "voluntarily attended the dinner." Center then adds that plaintiff "personally accepted the light, heat and use of the premises and the success of the bond sale in furtherance of his own job purposes." Because thereof, Center maintains, it is established that "the plaintiff personally accepted as a beneficiary, to some degree, the benefits of the defendant as a charitable organization, i.e., the charitable donation of the use of defendant's building for the furtherance of the plaintiff's purposes." (Emphasis supplied) It concluded that by the "plain meaning of the act," which by its terms is "deemed to be remedial" and is to be "liberally construed," defendant is not liable to respond in damages to plaintiff.
*321 It is apparent that the phrase on which Center places so much reliance, i.e., "where such person [the one injured] is a beneficiary, to whatever degree, of the works" of such charitable organization, must be read in connection with the immediately succeeding phrase:
"* * * provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, * * * where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation * * *." (Emphasis supplied)
Plaintiff was not a member of Center. He had no concern or relation with its benefactions. He was not even a resident of the community. He was "outside" of its "benefactions." His attendance at the Center building on the night of the accident was in the performance of his job for his employer and not as a recipient of Center's beneficence or philanthropy. The "public policy for the protection" of nonprofit charitable organizations, stated by the terms of the act to be its objective, does not encompass the situation here presented. To hold that, because of his employment, plaintiff derived an indirect advantage from the activities of Center and that, therefore, he was a beneficiary of the "works" of Center so as to render it free from liability at his suit, is to ascribe to the act a meaning completely foreign to its declared purpose and unwarrantedly to extend its protective scope. The trial court properly rejected Center's contention that it was immune from plaintiff's suit. The court's action, denying Center's motion for dismissal, is affirmed.

III.
Center's appeal from the dismissal of its cross-claim against Randall, to which we next direct our attention, is based upon the following provision (article 6) in the aforesaid contract between the parties, dated March 20, 1958:
*322 "PROTECTION OF WORK, PROPERTY, AND PERSONS  The Contractor shall adequately protect the work, adjacent property and the public and shall be responsible for any damage or injury due to his act or neglect."
Center's cross-claim alleged that Randall had breached the contract by failing "adequately" to "protect the work" and the pretrial order reasserts the claim. The substance of the contention is that Center's loss by reason of the alleged breach is equal to the amount for which it might be held liable to plaintiff. Any intention of seeking recovery against Randall on a theory of indemnification is expressly disclaimed by Center. It contends that Randall and it "had the right to agree as to who would protect the construction," and further to "agree between themselves who would be responsible for injuries and damages" if the work was not protected; that the issue in "the plaintiff's suit against both defendants and the issue between the defendants as to the causation of plaintiff's injuries" were identical, because, asserts Center, the "uncontroverted proofs establish that the plaintiff's injuries were the result of the failure to guard an open stairwell under construction by the defendant," Randall.
Randall contends that Center, by its aforesaid claim, is in fact doing no more than seeking indemnification for its (Center's) own negligence determined by the jury's verdict to have been established by the proofs. Under the above quoted article 6 of the contract, Randall claims it was responsible only for its negligence, not Center's. Since the jury found both defendants negligent, Randall urges that it is responsible, as between itself and Center, for only one-half of the verdict. The trial court agreed with the argument advanced by Randall and dismissed Center's cross-claim.
On this appeal, in challenging the propriety of the trial court's dismissal of the cross-claim, Center relies exclusively upon this court's opinion in Rommell v. United States Steel Corp., 66 N.J. Super. 30 (App. Div. 1961), as *323 support for its assertion of breach of contract. In Rommell, plaintiff was an employee of Commercial Contracting Corporation, an independent contractor hired to install "a shear line" in one of defendant's (U.S. Steel) buildings in Pennsylvania. Paragraph 16 of the contract between Commercial and Steel, as set forth in Rommell, at page 41, was as follows:
"* * * `the safety of all persons employed by Contractor * * * on Owner's premises shall be the sole responsibility of Contractor'; that the `Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him'; that the `Contractor shall take all reasonable measures and precautions at all times to prevent injuries to * * * any of his employees or any other person who enters upon Owner's premises'; that these measures and precautions `shall include * * * all safeguards and warnings necessary to protect workmen * * * against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether * * * the property of or being operated by the Contractor * * * the Owner or other persons.'"
The evidence indicated that while working at the plant plaintiff Rommell was injured when a vehicle of Steel passed over a "loose floor plate" causing it to bounce "up" and strike another plate suspended by Commercial's fork lift, whereupon the suspended plate fell on plaintiff's foot. Plaintiff, whose right to relief against Commercial was exclusively limited to the benefits of Pennsylvania's workmen's compensation statute, sued Steel in tort. Steel joined Commercial as a third-party defendant contending that Commercial had breached the aforementioned contract. The parties agreed that Pennsylvania law should govern whenever in conflict with the law of this State.
In Rommell we remanded plaintiff's action for a new trial on the issues of both liability and damages and reversed the dismissal of the third-party complaint. Apart from indemnity, we recognized that a breach of contract by Commercial might form the basis of liability and emphasized *324 that "indemnity for liability incurred by the indemnitee due to his own fault and damages for breach of contractual duties must be clearly distinguished." Rommell, supra, at page 46.
It is apparent, however, that the decision in Rommell cannot support Center's cross-claim in the case at bar. Initially, it is to be noted from the above quoted portion of the contract between Steel and Commercial that in Rommell the obligation undertaken by Commercial was at variance with that assumed by Randall in the case at bar. Two phases of the respective obligations are emphasized: (A) In Rommell, the pertinent portion of Commercial's agreement was to take "all safeguards and warnings necessary to protect workmen * * * against any conditions on" Steel's "premises which could be dangerous * * *." (Emphasis supplied) In contrast, in the instant case Randall's undertaking was "adequately" to "protect the work, adjacent property and the public." (Emphasis added) It is clear that Commercial's obligation was much broader and far more comprehensive than was Randall's. (B) The scope and extent of the responsibility of Commercial as to its employees (of whom Rommell was one) was evidenced by the aforesaid phrase "sole responsibility." (Emphasis added) In the case at bar the scope and extent of Randall's responsibility encompassed "any damage or injury due to his [its] act or neglect." (Emphasis added)
In Rommell, Commercial was not under a common-law duty to respond to plaintiff on the basis of a failure to exercise reasonable care, because plaintiff in that case was its employee and Commercial's obligation to plaintiff was measured by the provisions of "Pennsylvania's Workmen's Compensation Act, 77 P.S. § 1, et seq." (66 N.J. Super., at page 39) Absent contract provisions, Steel's "right of contribution against" Commercial was "limited to" Commercial's "liability to pay workmen's compensation benefits." (Rommell, at page 39) Consequently Commercial's contractual liability to Steel exceeded Commercial's pre-existing *325 legal duty and was binding on it and enforceable at Steel's suit based on the contract.
In contrast, in the case at bar, Randall was under a common-law duty to exercise reasonable care towards plaintiff as an invitee on Center's property. The contractual obligation on which Center relies in support of its cross-claim was nothing more than the reiteration of Randall's aforesaid common-law duty, and a breach of the contract, therefore, cannot afford a basis for the recovery sought by Center on its cross-claim. It is clear that the language in the contract in the instant case, explicitly relating as it does to the consequences flowing from the acts of negligence of Randall, is in sharp contrast to the terms and provisions employed in the Rommell contract. Consequently, the effect of the former contract is not to be resolved on the basis of the latter. It is manifest that Randall and Center were contracting with reference to the law of negligence as interpreted and applied in this State. Such being the case it is evident that the parties were not contracting with reference to degrees of negligence as between themselves. Recognition in Rommell (at page 47) that the respective degrees of negligence might be resolved by a jury stemmed solely from the specific contractual provisions there involved. Center's rights against Randall, therefore, are limited to those afforded by the Joint Tortfeasors Contribution Law (N.J.S. 2A:53A-1, et seq.).
The judgment in favor of plaintiff against Randall and Center is affirmed. The judgment in favor of Randall and against Center on the latter's cross-claim is affirmed.