139 N.J. Super. 425 (1976)
354 A.2d 347
DORIS SOMMERS AND FRED SOMMERS, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
UNION BEACH FIRST AID SQUAD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1976.
Decided March 2, 1976.
*427 Before Judges ALLCORN, KOLE and KING.
Mr. John A. Craner argued the cause for appellants (Messrs. Craner, Brennan and Nelson, attorneys).
Mr. John C. Rathman argued the cause for respondent (Messrs. Kirkpatrick and Rathman, attorneys).
The opinion of the Court was delivered by KING, J.S.C., Temporarily Assigned.
Plaintiffs Sommers appeal from the order of the trial judge granting summary judgment in favor of defendant Union Beach First Aid Squad (Squad). Squad is a charitable corporation organized, according to its charter, "to render First Aid services of every kind and description, particularly in and for the Borough and the Citizens of Union Beach * * * and to offer such services without compensation. Also for the further purpose of promoting better health and the cause of humanitarianism, to give aid to those in distress who are without funds for such aid."
At about 11:30 A.M. on February 27, 1972 plaintiff Doris Sommers was crossing the driveway of a building owned and operated by Squad. She was on her way to the building owned by defendant to make a contribution as an expression of appreciation to Squad for its recently rendered service to her mother. Apparently Squad had recently furnished hospital transportation to the mother.
February 27 was a cold day and a Squad member had washed his car in the driveway. Through a combination of the water and the cold climate ice formed upon the driveway where plaintiff slipped, fell and was injured. This driveway was commonly used by the Squad's membership and the public for ingress and egress to the Squad headquarters. Plaintiff is a resident of the municipality of Union Beach and lives about 600 feet from the Squad property.
The trial judge held as a matter of law on the basis of these undisputed facts that plaintiff was within the charitable *428 beneficence of Squad and was barred from recovery by N.J.S.A. 2A:53A-7 et seq. Plaintiff appeals asserting she is not within the ambit of the statutory immunity under the circumstances of the accident described.
The pertinent statutory provisions are as follows:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damages from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damages from the negligence of such corporation, society or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence. [N.J.S.A. 2A:53A-7]

* * * * * * * *
This act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes. [N.J.S.A. 2A:53A-10]
No one disputes Squad's qualification to raise the defense. Squad is clearly a nonprofit corporation organized exclusively for charitable purposes within the meaning of the statute. The issue is whether plaintiff is exempt from the immunity as being beyond the beneficence of Squad. The language of the statute presented for critical interpretation is whether the plaintiff "is a beneficiary to whatever degree, of the works of such nonprofit corporation." Construction is complicated by the qualification that "immunity from liability shall not extend to any person who shall suffer damage * * * where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation." N.J.S.A. 2A:53A-10 expressly deems the act to be "remedial" *429 and states that it "shall be liberally construed so as to afford immunity to the said corporations * * * in furtherance of the public policy for the protection of nonprofit corporations * * * organized for * * * charitable educational or hospital purposes."
The legislation was enacted as a legislative response to our Supreme Court's abolition of the defense of common law immunity for charitable organizations in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958).[1] Our Supreme Court has considered this statute only once since its passage. Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313 (App. Div. 1961), aff'd in part and rev'd in part, 38 N.J. 549 (1962). We believe Mayer provides guidance in our interpretation of the statute in the present case.
In Mayer plaintiff was regional director of the Development Corporation of Israel, a New York corporation engaged in sales of bonds issued by the State of Israel for that country's economic development. Plaintiff was injured while attending a dinner meeting held for the promotion of bond sales at defendant Center. Plaintiff's employer arranged for the use of the Center free of charge for these promotional purposes. There was a charge of $6 a plate, essentially to cover the cost of food service. The Appellate Division found that plaintiff was not barred by the immunity statute in this situation. It stated: "There is no doubt from the proofs that the sale of the bonds and the use of the hall therefor, represented a cooperative effort by Center and the Development Corporation to achieve a common objective * * *." 71 N.J. Super. at 316-317. It rejected the claim that a benefit to plaintiff's employer was a benefit to plaintiff, stating: "His attendance at the Center building on the night of the accident was in the performance of his job for his employer and not as a recipient *430 of Center's beneficence and philanthropy." Id. at 321. It concluded that on the occasion plaintiff Mayer was injured he was unconcerned in and unrelated to and outside of the benefactions of the Center under N.J.S.A. 2A:53A-7.
In affirming the Appellate Division on this point in Mayer, the Supreme Court stressed the importance of plaintiff's being the personal recipient of the benefaction of defendant, stating:
We desire to emphasize further plaintiff's capacity as an employee of Development Corporation of Israel. Assuming, arguendo his employer was a recipient of Center's benefactions, Mayer's status on the premises cannot be measured by that of his employer. His rights so far as the statutory immunity is concerned depended upon his own individual relation with the Center. True, he was on the premises under the aegis of his employer, and by virtue of the employer's arrangement became an implied invitee of the Center. But he was there in fulfillment of his function and obligation as an employee to engage in the employer's work at the direction of the employer, and not for the purpose of receiving personally the philanthropy of the Center. Under the circumstances present he was a stranger to the charity and the statute does not stand in the way of recovery. [38 N.J. at 553-554]
In the present case Mrs. Sommers' mother had recently received a benefit from the Union Squad, her hospital transportation. Mrs. Sommers did not personally receive the Squad's philanthropy. Her status should not be measured by her mother's benefit, any more than the status of the plaintiff in Mayer should be measured by his employer's benefit or indeed the benefit to the Jewish community as a whole. Plaintiff's rights depend on her own "individual relation" with the charity. Following the analysis in Mayer, plaintiff here was "a stranger to the charity" when she was on her way up the driveway to make the contribution.
The mere fact that plaintiff is a member of the community who might some day avail herself of benefits is urged as a bar to recovery here. We find this to be an overbroad interpretation of the statute. To follow this argument could well render nugatory the legislative attempt to *431 preserve responsibility to those "unconcerned in and unrelated to and outside of" the benefactions of the charitable corporation. Possible future realization of the charitable purpose is not sufficient to invoke the immunity. To bar plaintiff here would come close to creating a blanket immunity, a circumstance clearly not intended by the legislation.
Since enactment of the statute our courts have looked to the nature of the activity being undertaken by the allegedly immune defendant when the cause of action arises. The controlling test in that regard has been stated to be "whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance," and whether plaintiff then was truly a beneficiary thereof. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 536 (App. Div. 1962). See Book v. Aguth Achim Anchaie of Freehold, N.J., 101 N.J. Super. 559 (App. Div. 1968); Peacock v. Burlington Cty. Historical Soc., 95 N.J. Super. 205 (App. Div. 1967); Wiklund v. Presbyterian Church of Clifton, 90 N.J. Super. 335 (Cty. Ct. 1966). See also, the statutory precursors at common law, Bianchi v. South Park Presb. Church, 123 N.J.L. 325 (E. & A. 1939); Boeckel v. Orange Memorial Hosp., 108 N.J.L. 453, 456 (Sup. Ct. 1932).
In Anasiewicz, supra, plaintiff was attending church as a spectator at a marriage ceremony when the injury occurred. The plaintiff was a Roman Catholic but not a member of defendant parish. We held in favor of immunity because the defendant parish was actually engaged in its charitable objectives at the time of the accident. In Peacock v. Burlington Cty. Historical Soc., supra, plaintiff's husband had gone to defendant historical society's library to do research and she accompanied him, but she had no particular interest in defendant's work other than browsing and looking at the exhibits to pass the time. She was injured when she sat on a chair in the library after looking *432 over defendant's exhibits. We concluded that she was a beneficiary to some degree stating:
Rather, we think that the emphasis should be placed upon defendant's works, i.e., the maps and exhibits provided by it which the plaintiff, for whatever reason, and however casually, elected to examine or view. [Id., 95 N.J. Super. at 209]
In Wiklund v. Presbyterian Church of Clifton, supra, the injured plaintiff had been a member of the congregation for the past five years. Plaintiff served as an uncompensated Sunday school teacher. Sunday school was held at the same time as the regular church service. Plaintiff fell and was injured in the Sunday school lobby while walking to her class. Judge (now Justice) Pashman stated: "Plaintiff was a beneficiary of the works of the defendant at the time of the accident. She did not lose her status by virtue of the fact that she was on her way to render voluntary, uncompensated services to said defendant." Id., 90 N.J. Super. at 340. In contrast, plaintiff was permitted to assert her claims in Book v. Aguth Achim Anchai of Freehold, N.J., supra., where she was a paying customer at a bingo party when she was injured.
In this case the charitable corporate defendant was not actually engaged in any particular activity at the time of the accident. The transitory condition allegedly leading to the fall was the result of personal conduct of a member washing his car in the driveway. Plaintiff was not receiving any benefit from defendant Squad at the time of the occurrence. Indeed, she was conferring a benefit. The activity productive of her alleged harm was not truly related to defendant's charitable purposes. A liberal construction of the statute in favor of immunity, N.J.S.A. 2A:53A-10, does not find plaintiff to be a direct or indirect beneficiary of defendant but rather a person "unconcerned in and unrelated to and outside of the benefactions" of defendant at the time of the occurrence.
*433 The order below granting defendant's motion for summary judgment is reversed and the case is remanded for trial.
NOTES
[1] The statute was originally enacted in 1958, for one year, L. 1958, c. 131, and later re-enacted permanently in 1959, L. 1959, c. 90.