985 A.2d 189 (2009)
411 N.J. Super. 198
Andrea ORZECH, Individually and as Administratrix of the Estate of Keith Orzech, Michael Orzech and Paul Orzech, Plaintiffs-Respondents,
v.
FAIRLEIGH DICKINSON UNIVERSITY, Defendant-Appellant.
No. A-5919-07T1
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2009.
Decided December 29, 2009.
*190 William E. Staehle argued the cause for appellant (Law Offices of William E. Staehle, attorneys; Mr. Staehle, on the brief).
Barry D. Epstein argued the cause for respondents (The Epstein Law Firm, P.A., attorneys; Mr. Epstein, on the brief).
Before Judges LISA, BAXTER and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
This is a charitable immunity case. At issue is whether Keith Orzech, a twenty-one year old student and resident advisor (RA) at Fairleigh Dickinson University (FDU), who accidentally fell to his death from his fourth floor dormitory window, was a beneficiary of the school's charitable works at the time of the accident. Because Orzech's fall was alcohol-related and came in the aftermath of Orzech's violations of the school's alcohol policy and the failure of FDU's Public Safety Department to enforce the policy, the trial court concluded that at the time of the accident FDU was not engaged in the charitable objectives it was organized to advance and Orzech was not a beneficiary of those objectives. The judge therefore rejected FDU's claim of immunity under the Charitable Immunity Act (Act), N.J.S.A. 2A:53A-7 to -11. The wrongful death claim[1] proceeded to trial, and the jury found Orzech and FDU equally negligent in causing Orzech's death. The jury assessed total damages at $520,000. The judge molded the verdict and entered judgment against FDU for $260,000 plus prejudgment interest and costs.
FDU appeals, arguing that it was entitled to immunity under the Act. We agree. We hold that FDU's negligent failure to enforce its alcohol policy and Orzech's violation of that policy do not negate Orzech's status as a beneficiary of FDU's educational works at the time of the accident. Accordingly, we reverse.

I
As of July 1, 2005, Orzech was a student at FDU. He had recently completed the 2004-2005 school term and was enrolled for the upcoming 2005-2006 term. During the summer of 2005, although not taking classes, Orzech remained on campus as an RA. He resided in a suite at the University's Park Avenue residence hall. Orzech was then twenty-one years old. His suitemate, Christopher Bueckert, who was also an RA, was then twenty years old. The responsibilities of RAs included alerting Public Safety of observed violations of the school's alcohol policy.
FDU's residence hall alcohol policy prohibited the possession or consumption of alcohol, regardless of age, in some residence halls. But Park Avenue residents of legal drinking age were allowed to have alcohol in their rooms for personal consumption. However, gatherings where alcohol was visible or available to all people *191 present were prohibited. The policy also prohibited the use of grain alcohol, the consumption of alcohol to the point of intoxication, and games that encourage excessive drinking.
Orzech purchased alcohol on June 30, 2005 for a party in his suite. Ten to twelve people, including Bueckert and other underage guests, attended the party and consumed alcohol, including grain alcohol. Participants played prohibited drinking games. Orzech became extremely intoxicated. Two students helped him to bed sometime between 2:00 and 2:30 a.m.
At about 3:00 a.m., Bueckert checked on Orzech and observed that he was "fine," sleeping on his bed. At about 4:20 a.m., a University Public Safety officer patrolled the area where Orzech's body was later discovered and observed nothing unusual. Orzech's body was discovered in that location at about 9:00 a.m. The investigation by the Morris County Prosecutor's Office determined that Orzech leaned out of his window sometime between 4:20 and 9:00 a.m. and accidentally fell to his death. It was also determined that Orzech's blood alcohol content at the time of his death was 0.166%.
FDU's Public Safety Department was responsible for enforcing the school's alcohol policy. This responsibility included performing periodic checks of residence halls. Ordinarily, checks of a room for noise would be conducted only upon receipt of a noise complaint. RAs were responsible to inform Public Safety about possible violations of the alcohol policy, and upon receiving such reports, Public Safety was required to respond. On the night of this incident, no RA made any report to Public Safety of the party in Orzech's suite. The Public Safety sergeant on duty in Orzech's residence hall that night said he never heard or saw anything he believed required a response during his 11:00 p.m. to 7:00 a.m. shift and never received any reports from Public Safety officers or RAs.
Provost Kenneth Greene testified that FDU provided student residence halls because living in them afforded students the opportunity to develop "interpersonal skills of relationships or responsibility," an important aspect of their education. He further explained that the RA position was also an educational opportunity, as RAs learn interpersonal, leadership and management skills, and "what they're practicing as an RA supports what they have been learning in the classroom."
Both sides presented experts on college alcohol policies and their enforcement. Plaintiff's expert opined that FDU's policy was inadequate because alcohol was permitted in some dormitories, and alcohol-related injuries and deaths are less likely on an alcohol-free campus. The expert also opined that on the night of the accident, Public Safety officers should have checked on the party if they heard music and noise from the people gathered in Orzech's suite to ensure that the alcohol policy was being followed. FDU's expert opined that FDU's alcohol policy and the means of enforcing it were at least as stringent as in other colleges and universities, thus following or exceeding generally accepted standards.
The case was submitted to the jury solely on the grounds of negligence, namely, as the court instructed the jury, "not only that the school's alcohol policy was not appropriate, but also that the enforcement of the alcohol policy was negligent under the circumstances." As we stated, the jury found that FDU and Orzech were both negligent, that the negligence of both was a proximate cause of Orzech's death, and that their negligence should be allocated at 50% each. The jury assessed total *192 damages at $520,000, resulting in a molded verdict and judgment against FDU of $260,000 plus prejudgment interest and costs. FDU's motions for judgment notwithstanding the verdict or a new trial were denied.[2]
Prior to trial, FDU had moved for summary judgment based on charitable immunity. The judge expressed the view that because FDU did not enforce its alcohol policy and because Orzech egregiously violated the policy, drank to excess and apparently fell as a result of his intoxicated condition, FDU was not entitled to immunity under the Act. He reasoned that at the time of the accident FDU was not engaged in the charitable objectives it was organized to advance and Orzech was not truly a beneficiary of those objectives. In denying the summary judgment motion, the judge determined that there was at least an issue of fact as to Orzech's beneficiary status at the time of the accident.
During trial, at the conclusion of all of the evidence, FDU moved for involuntary dismissal based on charitable immunity. The judge concluded that the facts as more fully developed at trial "support[ed][his] original decision even more than they did when the initial decision was given." He noted that Orzech engaged in multiple violations of the school's alcohol policy. Further, the evidence revealed that the Public Safety Department was particularly lax in its enforcement responsibilities during the summer months. The judge stated that the Public Safety Department "did not do its job at all in the month of June, and certainly did not on the evening in question[;] there is no way they could not have heard the noise from this party if they had made patrols."
In rendering his decision, the judge considered reported decisions in which colleges and universities were granted immunity against suits by their students. However, although the scope of educational works was broadly construed in those cases, none involved violations of school policy, which the judge found to be a distinguishing factor. The judge rejected a per se rule that, "as long as you're a student, no matter what you're doing, you're a beneficiary of the college's or university's works, then there is immunity." Instead, consideration must be given to the particular facts of each case. He noted that "there's no case which has facts like this case." He concluded that because of the violations of the school's alcohol policies Orzech was not a beneficiary of FDU's educational works at the time of his fall.

II
As relevant to this case, the Act provides:
a. No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works *193 of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.
. . . .
c. Nothing in this section shall be deemed to grant immunity to: (1) any trustee, director, officer, employee, agent, servant or volunteer causing damage by a willful, wanton or grossly negligent act of commission or omission, including sexual assault and other crimes of a sexual nature; . . .
[N.J.S.A. 2A:53-7.]
Thus, the statutory elements required to support a claim of immunity are (1) that the entity asserting immunity was formed for nonprofit purposes, (2) that it is organized exclusively for religious, charitable, or educational purposes, and (3) that it promoted such purposes at the time of the injury to the plaintiff, who was then a beneficiary, to whatever degree, of its charitable works. Loder v. St. Thomas Greek Orthodox Church, 295 N.J.Super. 297, 301, 685 A.2d 20 (App.Div.1996). There is no dispute that FDU satisfies the first two elements. The dispute here implicates only the third element.
Our analysis of Orzech's beneficiary status at the time of the accident begins with some broad principles. The Act constitutes remedial legislation, and the Legislature has directed that it "be liberally construed so as to afford immunity" to qualifying entities "in furtherance of the public policy for the protection of [such entities]." N.J.S.A. 2A:53A-10. The language of the immunity provision reinforces this precept by granting immunity against any beneficiary "to whatever degree." N.J.S.A. 2A:53A-7a. Thus, for a person to be deemed a beneficiary, he or she must be receiving, at the time of the accident, the benefactions of the charitable organization "at least in some degree," so as not to be "unconcerned in and unrelated to and outside of the [entity's] benefactions." Loder, supra, 295 N.J.Super. at 304, 685 A.2d 20.
In the context of colleges and universities, courts have adhered to the liberal construction requirement in analyzing the scope of educational purposes covered by the Act. Thus, "the term `educational' has been broadly interpreted and not limited to purely scholastic activities." Bloom v. Seton Hall Univ., 307 N.J.Super. 487, 492, 704 A.2d 1334 (App.Div.) (citing Morales v. N.J. Acad. of Aquatic Sciences., 302 N.J.Super. 50, 54, 694 A.2d 600 (App.Div. 1997)), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998); see also Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 465, 577 A.2d 188 (App.Div.1990); Pomeroy v. Little League Baseball of Collingswood, 142 N.J.Super. 471, 474, 362 A.2d 39 (App.Div.1976).
In Bloom, we held that a student was a beneficiary of Seton Hall's educational works when he slipped and fell in a pub operated on campus by the university. Id. at 488, 704 A.2d 1334. We reasoned that the student "was no less a Seton Hall student because he bought a beer at a University-run student pub than if he bought a sandwich at a University-run commons, and no less a beneficiary of its works." Id. at 492, 704 A.2d 1334. We noted that, consistent with the remedial purpose of the Act and the liberal manner in which it must be construed, courts have granted nonprofit institutions "substantial latitude in determining the appropriate avenues for achieving their objectives." Id. at 491, 704 A.2d 1334. Seton Hall's decision *194 to provide for an on-campus pub fell within the reasonable range of such purposes and "[did] not alter either the fundamental educational nature of the institution or the relationship of the student to the university as a beneficiary of its works." Id. at 492, 704 A.2d 1334. We were satisfied that it was a reasonable educational goal for a university to conclude "that a campus experience ought to include opportunities to mature in an environment enriched not only by study and classes, but by diverse forms of social interchange within the university setting." Ibid.
In a subsequent case, we rejected a college student's claim that when she fainted in a hallway and was injured after leaving a laboratory class (apparently to go to the bathroom), "that merely being a student of Stockton did not necessarily make her a beneficiary and `[t]here is no case law that labels a student of a university or a college an automatic beneficiary to that institution.'" Graber v. Richard Stockton Coll. of N.J., 313 N.J.Super. 476, 484, 713 A.2d 503 (App.Div.), certif. denied, 156 N.J. 409, 719 A.2d 641 (1998). Referring to our recent decision in Bloom, we stated: "Fundamental though unexpressed in our reasoning in Bloom was the conclusion that a student engaging in educational pursuits is per se a beneficiary of a college or a university." Ibid.
In O'Connell v. State, 171 N.J. 484, 487, 795 A.2d 857 (2002) the Supreme Court reinstated a summary judgment in favor of Montclair State University, finding it immune from a student's claim for injuries suffered in a fall in a campus amphitheater. In doing so, the Court expressly approved and endorsed Graber, and commented that, "as a student of Montclair engaging in educational pursuits, O'Connell is `per se a beneficiary' of Montclair." Id. at 491, 795 A.2d 857 (citing Graber, supra, 313 N.J.Super. at 484, 713 A.2d 503). Thus, our characterization in Graber of the implicit holding in Bloom of per se beneficiary status of students while engaging in educational pursuits was confirmed by the Supreme Court in O'Connell.
Of course, we recognize that in Graber the student's activity in walking down a hallway in an academic building immediately after leaving a laboratory class is easily understandable as conduct closely tied to the traditional educational purposes of an institution of learning. The connection was not as obvious in Bloom, although we held it was sufficient. The connection is even less obvious in the case before us.
We have no hesitancy in concluding that the provision by a college or university of dormitory housing for its students falls within the broad range of reasonable educational goals to provide opportunities for students to live in an environment with other students, share experiences, broaden their horizons by living and interacting with other students of diverse backgrounds, and maturing as young adults. As Provost Greene explained, living in residence halls provides students the opportunity to develop interpersonal skills, relationships and responsibility. Further, serving as an RA provides additional educational opportunities to develop interpersonal leadership and management skills, supporting what students learn in the classroom.
Thus, a student, while living in a dormitory (whether or not also an RA) is receiving the benefits of the school's educational works, at least to some degree, for purposes of beneficiary status under the Act. As such, a dormitory resident injured in the dormitory as a result of the negligence of the university or its employees or agents would generally be barred from suing the university or its employees or agents. This is because the mere act of living in a dormitory setting constitutes *195 receipt by that resident, to some degree, of the educational benefactions of the university as broadly construed.
This is unlike cases in which we have found that beneficiary status did not exist. In Sommers v. Union Beach First Aid Squad, 139 N.J.Super. 425, 432, 354 A.2d 347 (App.Div.1976), for example, we held that a woman who slipped and fell on ice in the driveway of a non-profit first aid squad she visited for the purpose of making a donation as thanks for services the squad had previously rendered for her mother was not a beneficiary because, at the time of her fall, the first aid squad was not engaged in any particular activity and she was not receiving a benefit. We stated that the controlling test of beneficiary status is "whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance." Id. at 431, 354 A.2d 347. We concluded that the test was not satisfied because the "transitory condition" that allegedly caused the woman's fall resulted from the personal conduct of a squad member washing his car in the driveway, and the woman was not receiving any benefit from the squad at the time of the occurrence. Id. at 432, 354 A.2d 347. Indeed, she was conferring a benefit. Ibid.
In Pomeroy, supra, 142 N.J.Super. at 475, 362 A.2d 39, we distinguished Sommers. In that case, a spectator at a Little League baseball game who was injured when the bleachers on which she was sitting collapsed was deemed a beneficiary of the Little League because, at the time of her fall, she was a spectator and thus benefiting from the works of the Little League, which, by playing a game, was engaged in the performance of the charitable objectives it was organized to advance. Ibid.
We also found an absence of beneficiary status in Book v. Aguth Achim Anchai of Freehold, 101 N.J.Super. 559, 561, 564, 245 A.2d 51 (App.Div.1968), with respect to a woman who was injured as a patron of bingo games operated by a synagogue (of which she was not a member) when a table on which she was seated collapsed. Although the proceeds of the bingo games were used for charitable and religious works, the games themselves were not the charitable works for which the synagogue was organized. Id. at 563, 245 A.2d 51. Because the plaintiff was not a member of the synagogue and merely attended the games for recreation, and not as a recipient of the beneficence or philanthropy of the synagogue, "she had no concern with or relation to [the synagogue's] benefactions." Id. at 564, 245 A.2d 51. She was therefore "`unconcerned in and unrelated to and outside the benefactions' of the synagogue and . . . the [synagogue] therefore was not clothed with the immunity of [N.J.S.A.] 2A:53A-7 but was responsible under the ordinary principles of negligence." Ibid.
The cases make clear that beneficiary status turns on whether the charitable organization was performing its charitable works at the time of the accident, and the relationship at that time of the organization and the claimant. As we have stated, a university is performing educational works while providing dormitory facilities for its students, and while living in a dormitory a student is a beneficiary, to some degree, of the university. The question before us is whether the violation by Orzech of FDU's alcohol policy and the failure of FDU's Public Safety Department to properly enforce the policy (or, perhaps, the inadequacy of the policy itself) can serve to negate what would otherwise be Orzech's beneficiary status while a student in his dormitory.
We first address FDU's negligent behavior. There was no allegation in this *196 case that FDU or any of its employees or agents engaged in willful, wanton or grossly negligent conduct. If there were such allegations, and if they were proven, there would be no immunity. N.J.S.A. 2A:53A-7c(1); P.V. v. Camp Jaycee, 197 N.J. 132, 148 n. 6, 962 A.2d 453 (2008); Hardwicke v. Am. Boychoir School, 188 N.J. 69, 97, 902 A.2d 900 (2006). The allegations against FDU, and the findings of the jury, were limited to simple negligence. Negligence, of course, requires a breach of a duty imposed by law, causing injury. By definition, negligence is a form of wrongdoing. FDU's wrongdoing in this case was either that it did not have in place an adequate alcohol policy for its students or it did not adequately enforce the policy it did have. Either way, the wrongdoing rose to no higher a level of culpability than negligence.
Obviously, the Act contemplates that charitable organizations will negligently cause injury to persons who, at least to some degree, are beneficiaries of their charitable works at the time of the injury, and that is precisely the conduct for which immunity is granted. N.J.S.A. 2A:53A-7a. In our view, the nature of the negligence is not dispositive; all forms of negligence must be treated the same under the Act. It should not matter, for example, whether the negligence consists of allowing a slippery substance to accumulate on the floor, as in Bloom, maintaining defective bleachers, as in Pomeroy, or failing to enforce a student alcohol policy. In each circumstance, the charitable organization, while performing its charitable works, did so in a negligent manner at that particular time. If the conduct is limited to simple negligence, and all elements of the Act are satisfied, the immunity applies.
We turn now to Orzech's conduct in violating FDU's alcohol policy, both as a student resident of the dormitory and as an RA. Certainly, if no alcohol was involved, and this tragic accident was caused by some other form of negligence by FDU, such as premises liability dealing with the installation or maintenance of the window, immunity would apply. We fail to see how Orzech's violation of the alcohol policy altered his relationship to FDU as a beneficiary of its works while he was living in the dormitory and thus receiving FDU's educational benefits in the manner and for the reasons we have explained. Indeed, his misconduct was found by the jury to constitute negligence on his part. His misconduct should not provide a basis to improve his position with respect to FDU under the Act and defeat the immunity FDU would have enjoyed if Orzech had been free of fault. His negligent conduct at the time he was receiving FDU's educational benefits, while relevant as to the comparative fault of the parties if there was no immunity, is not relevant as to beneficiary status and, consequently, satisfaction of the third immunity element.
This is no different than any potential comparative negligence by the student who slipped on the wet floor in the pub in Bloom, or the student who fell down the steps of the amphitheater in O'Connell. The beneficiary status inquiry in those cases did not focus on who was at fault. It focused on the relationship between the charitable institution and the claimant at the time of the injury. The nature of the fault or the comparative degree of fault by either party becomes relevant only if it is first determined that at the time of the accident the claimant, based upon his or her relationship with the charitable organization, was not a beneficiary, as long as the alleged fault of the charitable organization rose no higher than simple negligence.
The judgment under review is reversed.
NOTES
[1] In addition to the wrongful death claim based on FDU's negligence, the complaint also asserted claims for intentional and negligent infliction of emotional distress and breach of contract. Those claims were dismissed at various stages of the litigation. There has been no cross-appeal with respect to those dismissals. The complaint also alleged premises liability for FDU's failure to discover and eliminate dangerous conditions and maintain the dormitory premises in a safe condition, and by improperly installing and maintaining its dormitory windows, thereby creating a dangerous and unsafe condition. That theory of negligence was apparently abandoned before trial and is not implicated in this appeal.
[2] In addition to its charitable immunity arguments, FDU also argues on appeal that the trial court erred in denying its motion for judgment notwithstanding the verdict or a new trial because the finding of the jury allocating negligence equally between the parties was not supported by the evidence and constituted a miscarriage of justice under the law, and that it owed no duty of care (with respect to alcohol consumption) to Orzech. Because we decide the appeal on immunity grounds, we find it unnecessary to address these arguments.