ISABELLA BOECKEL AND LOUIS BOECKEL, PLAINTIFFS, v. THE ORANGE MEMORIAL HOSPITAL, A BODY COR-PORATE, DEFENDANT.

Submitted October 16, 1931—Decided February 19, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiffs, *Quinn, Parsons & Doremus* (*John J. Quinn,* of counsel).

For the defendant, *Collins & Corbin* (*Edward A. Markley* and *Howard F. McIntyre,* of counsel).

The opinion of the court was delivered by

CASE, J. This suit in the Supreme Court, Monmouth Circuit, to recover for personal injuries sustained by Isabella Boeckel and for consequential damages suffered by her husband and co-plaintiff, Louis Boeckel, resulted in verdicts in their favor of $6,000 and $1,500, respectively. The case comes up on defendant's rule to show cause why the verdicts should not be set aside and a new trial ordered.

Mrs. John M. Grimes, daughter of the plaintiffs, was a patient at defendant's hospital. On the evening of October 29th, 1929, Mrs. Boeckel, while leaving the hospital after visiting her daughter, slipped and fell on the stairs, receiving the injuries sued upon. The cause for the fall was alleged to be a wetness or foreign substance upon the stairs, making them dangerous and slippery. Although plaintiffs' brief recites as a fact that the stairway was rendered slippery by soap suds, the evidence does not disclose what the substance was or how it got there. Plaintiff's son-in-law testified that when he and the plaintiff came in "there was a white substance there, something like soap or something, I couldn't say what it was," and that when he left, separate from and earlier than the plaintiff, the steps were still in the same wet or damp condition. The injured plaintiff testified that the steps "were wet because they still had that glossy look on them and [I] might have slipped on them." The contention is that one Miss Funk, supervising nurse, was in charge of the premises, including the steps, and that failure

on her part to discover the alleged substance was negligence imputable to the defendant; and, more generally, that the defendant owed a duty to the plaintiff, a visitor during the regular visiting hours, to exercise ordinary care to render halls and stairways reasonably safe for use. However, aside from the undefined moisture which it is said the supervising nurse should have discovered, there was no evidence that the defendant had not met the duty thus charged against it; which brings the question of liability back to that of the supervising nurse's alleged neglect. It is not contended that the defendant failed to exercise due care in the employment of its agents and employes.

The first point presented by the defendant is that the court below erred in refusing to direct a verdict for the defendant upon the ground that the defendant is a charitable institution organized and existing not for pecuniary profit and, therefore, not liable.

Defendant is admittedly a charitable institution maintaining a hospital. It has been held by our Court of Errors and Appeals that such an institution, by public policy, shall not be held liable for injuries resulting to patients, even pay patients, through the negligence or carelessness of its physicians and nurses. *D'Amato* v. *Orange Memorial Hospital,* 101 *N. J. L.* 61. To the extent of the holding that pronouncement is controlling. Also, the logic of its reasoning is for our enlightenment in correlated circumstances. Applying that principle to a pertinent hypothesis in the instant case, if the patient, Mrs. Grimes, daughter of the plaintiff, had been injured as she was leaving the hospital, from the same cause and in the same manner as the plaintiff was injured, the patient, even if a pay patient, could not have recovered; this, because it is not sound public policy that an institution, charitably organized and maintained, shall be held responsible to its patients for the negligence of its nurses; and this, too, notwithstanding the institution was maintained precisely for the reception and care of cases of which the patient's was one. But the plaintiff, so it is argued, may recover because she was not a patient, but was

simply the mother of and a visitor upon the patient. Plaintiff entered the premises voluntarily and for her own purposes. To the extent that her need went—that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence—she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. She had no invitation from the defendant, other than was to be implied from the privilege given by the rules of the institution to visit the sick. The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity. In a very real sense the charitable impulses which served the patient served also the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain. Accepting the principle, as applied to a charitable institution maintaining a hospital, that public policy denies recovery to a patient injured through the negligence of a nurse, we consider that the logic of the rule holds the same negation against those who, in visiting a patient are injured from like cause. The liability of the defendant hospital was not shown as a matter of law and the direction of a verdict in favor of the defendant should have been granted.

In *Schloendorff* v. *Society of New York Hospital*, 105 *N. E. Rep.* 92, the opinion of the New York Court of Appeals in determining the non-liability of the defendant hospital to a patient makes this observation *obiter*—"it is, therefore, also a settled rule that a hospital is liable to strangers, *i. e.,* to persons other than patients, for the torts of its employes committed within the line of their employment," citing in support thereof *Kellogg* v. *Church Charity Foundation,* 203 *N. Y.* 191; 96 *N. E. Rep.* 406, and *Hordern* v. *Salvation Army,* 92 *Id.* 626. Kellogg v. Church Charity Foundation was a suit brought by an individual who, in riding his bicycle along the highway, had been hit by the defendant's ambulance. In Hordern v. Salvation Army it was held that where a journeyman mechanic was engaged in making repairs on a

boiler on the premises of the Salvation Army, the latter was not relieved from liability for negligence of its agents and servants on the theory that the rule of *respondeat superior* does not apply to such a corporation, but the opinion terminates with this reservation: "To avoid misapprehension, it may be well to say that we do not intimate any view as to the status of persons visiting charity patients and received through the courtesy of the charitable institution—whether there would be any greater liability to such persons than to the patients themselves." It is obvious that neither of these holdings is a pertinent precedent adverse to the defendant in the instant case; particularly in view of the fact that the Hordern decision specifically reserves the situation with which we are now concerned.

The courts of the Commonwealth of Massachusetts have established the doctrine that a charitable organization is exempt from liability for the negligence of its agents upon the ground that the funds of such an organization are held in trust to charitable uses and may not be diverted to the payment of liabilities arising from tortious acts. In addition to the decisions of that jurisdiction cited in the D'Amato opinion may be noted *Foley* v. *Wesson Memorial Hospital,* 141 *N. E. Rep.* 113, and *Glaser* v. *Congregation Kehillath Israel,* 161 *N. E. Rep.* 619. The reasoning of these cases leads flatly to the result that a charitable corporation is exempt from liability for the negligence of its servants, whether such negligence causes injury to the recipient of the charity or to a stranger.

But whatever the results reached or the reasoning adopted in other jurisdictions, we think that the course taken by our Court of Errors and Appeals in the D'Amato case leads to the conclusion above stated.

Our finding in this respect makes it unnecessary to consider the remaining points presented on defendant's brief.

The rule will be made absolute.