10 N.J. Super. 229 (1950)
76 A.2d 917
CLARA JEWELL, PLAINTIFF,
v.
ST. PETER'S PARISH, A RELIGIOUS CORPORATION, DEFENDANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided November 27, 1950.
Mr. Louis J. Venezio, attorney for plaintiff.
Messrs. Winne & Banta (Mr. George Winne appearing), attorneys for defendant.
DREWEN, J.C.C.
Defendant moves for summary judgment of dismissal, the contention being that the effect of certain *230 admissions made by plaintiff pursuant to Rule 3:56-3 is such that, in the language of the Rule, "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as matter of law."
The complaint alleges that on or about July 23, 1949, plaintiff, as defendant's invitee, went upon defendant's premises during the progress there of "entertainment, games and amusements, and other social affairs" under defendant's auspices; and that while there she was injured by a fall on a stairway, the fall having been caused by the faulty condition of the stairway, of which condition defendant's negligence was the proximate cause.
The admissions upon which the motion is predicated are that defendant is a Roman Catholic Church and that at the time of the accident and injury alleged plaintiff was its invitee in consequence of her having paid the required fee for admission to a social activity sponsored by defendant and held under its control and direction in one of its church buildings. Defendant urges that since it is thus admittedly a charitable institution within the meaning of the law it is, in the circumstances described in the complaint, immune from any claim for damages resulting from negligence on the part of its servants or agents. Authority for this proposition is sought in the case of Bianchi v. South Park Pres. Church, infra. It is my view that neither that case nor any other on the subject in this State supports the motion, but rather that, on factual contrast, all such decisions are against it.
The principle to which defendant's contention is directed is well recognized and in different degrees is established in the jurisdictions of the several states and of the United States. In some of these the immunity accorded to eleemosynary institutions against claims of the kind in question is absolute, while in New Jersey it is qualified. The rule in this State is that benefit to the plaintiff, derived from the charity that is sued, is the sine qua non of the latter's immunity. Where such benefit has been shown legally to have existed when the claim accrued immunity has been enforced, *231 otherwise it has been as uniformly denied. Our decisions may be said to fall into two groups, one comprising claims for damages against hospitals and the other comprising claims for damages against churches. (Rose v. Raleigh Fitkin Foundation, 25 N.J. Misc. 311 (Sup. Ct. Circ. 1947); affirmed, 136 N.J.L. 553 (E. & A. 1948); Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932); affirmed, 110 N.J.L. 509 (E. & A. 1933); D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925); Simmons v. Wiley Methodist Epis. Church, 112 N.J.L. 129 (E. & A. 1934); Kolb v. Monmouth Memorial Hospital, 116 N.J.L. 118 (E. & A. 1936); Fair v. Atlantic City Hospital, 25 N.J. Misc. 65 (Atl. Cty. Circ. Ct. 1946); Bianchi v. South Park Pres. Church, 123 N.J.L. 325 (E. & A. 1939); Woods v. Overlook Hospital Ass'n., 6 N.J. Super. 47 (App. Div. 1949)).
In the Bianchi case, on which defendant relies, the plaintiff was a member of a Girl Scout troop for which the defendant church had provided meeting quarters in rooms that were part of the church premises. Having attended a meeting of the troop, plaintiff, while on her way out of the building, was in the act of descending a stairway when, because of darkness there prevailing and resulting, as alleged, from negligent acts and omissions of defendant's servants and employees, she fell and was injured. The Court of Errors and Appeals found that the qualifying benefit moving from defendant to the plaintiff was proved and held the church corporation immune from the suit.
The existence of the benefit in the Bianchi case stands in sharp contrast to the absence of any similar or corresponding element in the present case. In the Bianchi case the court, by a careful appraisal and interrelating of one institution with another, bares the true affinity between them and so ascertains that the plaintiff was affected by the benefit upon which its decision turns.
By way of declaring the character of defendant as eleemosynary or charitable within the juridical sense of those terms, *232 the court extols the work and influence of the church as a primary factor in the case, and with respect to the activities and aims of the Girl Scout movement says they "are plainly classable as a secondary church function in aid of its (the church's) primary purpose." The court previously says: "The Scout movement has its genesis in the associations fostered by church and community groups in the early part of the twentieth century whose objective was the training of the youth in right living and exemplary citizenship and thus to develop and ennoble character to the enrichment of society as well as the good of the individual." So it is, though plaintiff herself was not a member of the defendant church, that the Girl Scout movement and the church are brought within a single focus of high moral and civic good, to the plaintiff as an individual and to the community in general. The opinion finally declares that in these circumstances "it is of no consequence that the scout members paid dues and the troop itself made a donation to the defendant society for" the use of the rooms in which the troop meetings were held.
This court could not adopt the view advanced by defendant on this motion without expanding the principle of the Bianchi decision, to say nothing of our other decisions of like import, so drastically as to impute to it an authority entirely beyond its manifest holding. There is nothing whatever in the facts before me to show a relation between the parties here beyond that resulting from plaintiff's payment of the required fee for the privilege of participating in "a social activity," without more, as set forth in the admissions. What this gives to the plaintiff is not the status of defendant's beneficiary, on a parity of standards like those to which the Bianchi case adheres, but rather the status, if anything, of defendant's patron. So far as the complaint and the admissions show, what attracted plaintiff to defendant's building and there engaged her is essentially unrelated to defendant's institutional life and work, and in itself is such as to have required in the way of sponsoring and auspices nothing beyond the merely secular. Needless to say, the result would be different *233 were plaintiff's presence upon defendant's premises at the time of the claimed injury shown to bear relation to the church's primary function, not accidentally only but essentially and in the nature of things, a relation comparable to that between the entities with which the Bianchi decision is concerned.
What we are dealing with here is a doctrine whose designed effect is the frustration, in certain cases, of claims for damages, notwithstanding the validity of the claims otherwise, and without reference to aught that touches the merits of either the claimant or the claim. Certainly a thing of that kind should not be applied loosely. At any rate, I am convinced it should not be applied here, where the facts deviate unmistakably, as I think, from the conditions required for rendering defendant immune.
The motion for summary judgment is denied.