74 N.J. Super. 532 (1962)
181 A.2d 787
ANNE ANASIEWICZ AND CHESTER ANASIEWICZ, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
SACRED HEART CHURCH OF NEW BRUNSWICK, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1962.
Decided June 8, 1962.
*533 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Karl R. Meyertons argued the cause for appellants (Messrs. Strong & Strong, attorneys; Mr. John V.R. Strong, of counsel).
Mr. Baruch S. Seidman argued the cause for respondent (Messrs. Burton, Seidman & Burton, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
This case was submitted to the Law Division on an agreed state of facts. Plaintiffs, professors of the Roman Catholic faith, but not members of the Sacred Heart parish, were invited guests at a wedding ceremony held at the church on Saturday afternoon, January 17, *534 1959. While leaving, Mrs. Anasiewicz slipped and fell because of ice and snow which had accumulated upon some of the entrance steps, and sustained injuries for which she, and her husband derivatively, brought suit.
Plaintiffs appeal from the trial court's holding that the action was barred by the immunity granted the defendant pursuant to N.J.S.A. 16:1-48 to 53 (L. 1958, c. 131). That statute, approved July 22, 1958, took effect on July 1, 1958 and expired by its own terms on June 30, 1959. The pertinent provisions of the legislation are the following:
"1. No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; * * *.

* * * * * * * *
3. For the purposes of this act * * * the buildings and places actually used for colleges, schools, academies, seminaries, historical societies, public libraries, religious worship, charitable or hospital purposes, the moral and mental improvement of men, women and children, nursing homes, rest homes, parish houses, auditoriums, houses of and for prayer and buildings and places, however named or designated, operated and maintained for equivalent uses, when so operated and maintained by any such nonprofit corporation, society or association, shall be deemed to be operated and maintained for a religious, charitable, educational or hospital purpose.
4. This act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes." (Italics supplied.)
Precisely put, the question is whether Mrs. Anasiewicz was "a beneficiary, to whatever degree, of the works" of the church, in which event the defendant is immune from *535 this action, or whether she was "unconcerned in and unrelated to and outside the benefactions" of the church, in which event the defendant would be responsible to plaintiffs on ordinary principles of negligence.
Construction of the statute necessarily requires a determination of the purposes it was designed to serve. On April 28, 1958 the Supreme Court in Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); and Benton v. Y.M.C.A., 27 N.J. 67 (1958), repudiated the charitable immunity doctrine which had previously been the law of the State. And in Dalton the court rejected the defendant's contention that the overturning of the immunity should have prospective rather than retrospective application, 27 N.J., at pp. 25-26.
The impact of these decisions upon the tort liability of charitable institutions such as the defendant, led to the enactment of L. 1958, c. 131, supra. The obvious objective of the statute was to revive, for a limited period, the immunity as it had been judicially defined, in order that charitable institutions might take steps to protect themselves from loss resulting from the expanded liability by obtaining liability insurance.
That the Legislature did not intend to expand, modify, or alter in any way the span of the pre-existing immunity seems apparent from the wording of the statute, as above italicized. Significantly, the verbiage employed closely parallels the language of the cases in which the immunity rule was enunciated. Compare, for example, Lindroth v. Christ Hospital, 21 N.J. 588, 592-593 (1956), in which the court noted that the rule as it then existed was that:
"The determinant whether the injured party's otherwise just tort claim against the charity may be defeated by an assertion of immunity from liability therefor is whether the person is one of the `recipients of the benefactions,' one of the `beneficiaries of the charitable institution,' rather than a person `unconcerned in and unrelated to that which the donor brought into being or supports in operations,' * * *. Phrased otherwise in that opinion [citation]. *536 the inquiry is whether the injured person was at the time of the mishap `a beneficiary of the charity in the legal sense' or `a stranger to the charity.' * * *" (Emphasis added)
We are convinced, therefore, that the Legislature intended the language of the act to be construed in light of stare decisis to the end that status quo be preserved during the life of the statute. Note, particularly, the injunction contained in section 4, quoted above, that the act be liberally construed so as to afford immunity.
The thesis of appellants is that Mrs. Anasiewicz was "no more than a spectator at an event, which from time immemorial, has lured and attracted women of all creeds and religious beliefs" and as a mere spectator she was not a "beneficiary" of the "works" of the church. It is argued that "beneficiary presupposes that something must affirmatively flow to the plaintiff," and that here "the brief ceremony was focused solely upon the man and woman about to be married"; thus, the spiritual benefit of the sacrament of marriage "was at best enjoyed only by the bride and groom and perhaps extended to their immediate relatives."
Without passing upon the doctrinal soundness of plaintiffs' premise, we hold it to be inapposite to the problem of statutory construction with which we are presented. Under the cases overruled by Collopy, Dalton, and Benton, supra, the determination of whether one was a "beneficiary of the works" of a charitable institution did not depend upon a showing that the claimant personally received a benefit from the works of the charity. Rather, the ratio decidendi was whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance.
Thus, in Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453, 456 (Sup. Ct. 1932), where plaintiff after visiting her daughter who was a patient at the hospital slipped and fell on a stairway, the court in upholding the immunity said:
*537 "The opportunity afforded for [plaintiff's] attendance was part of the charitable service the defendant was rendering to suffering humanity. In a very real sense the charitable impulses which served the patient served also the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain."
The philosophy that the performance of charitable works benefited the community as a whole, and so became the basis of immunity, was emphasized in the later case of Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 332-33 (E. & A. 1939). There plaintiff, a non-member of the defendant Church-Society, was injured while attending a girl scout meeting conducted in the church house. This building, separate and apart from the church itself, was used as a social center, as well as for the administration of church affairs. In striking down the contention that plaintiff was not a beneficiary of charitable works, the court said:
"It is argued that the charity's trustees `maintained and controlled' the particular church house `for purposes unassociated with its religious function,' and the plaintiff was therefore a stranger to its benevolence.
This is an illusory distinction. The church function is not so narrowly confined. It is not limited to sectarian teaching and worship. In modern view, exercises designed to aid in the advancement of the spiritual, moral, ethical and cultural life of the community in general are deemed within the purview of the religious society. A social center is now commonly regarded as a proper adjunct of the local church  conducive to the public good as well as advantageous to the congregation."
Clearly, Mrs. Anasiewicz was a beneficiary of the works of defendant church under the liberal views of charitable benevolence expressed in the Boeckel and Bianchi cases. The defendant was engaged in the performance of a ritual of deep significance to it, its communicants, and, indeed, to the great preponderance of people of all creeds  or of none.
The plaintiffs attended the ceremony by their own choice, and so by their volition were concerned in, related to, and within the benefactions of the church. Whether they actually *538 benefited spiritually by their attendance is of no moment. Such a test, wholly subjective, and depending upon many debatable factors which transcend legal concepts, is not within the ken of the law. While we do not disregard the fact that what took place in their presence was designed to further the high purposes of sanctifying a marriage in accordance with religious tenets which they embrace, the controlling fact is that in providing the situs of the ceremony the church contributed to the preservation of moral or sociological concepts held by the community generally. The "works" of the institution were, therefore, a "benevolence" shared in common by plaintiffs and all members of the community, present or absent, and without regard to their religious beliefs or persuasions. This, or a comparable intrinsically charitable function, was absent in all cases in which immunity was previously denied. Cf. Lindroth v. Christ Hospital, supra, and the cases collated therein, 21 N.J., at pp. 592-3.
Plaintiffs cite Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313 (App. Div. 1961), certif. granted 37 N.J. 90 (1962), as authority for their position that they were not beneficiaries of the charitable works of the defendant within the meaning of the statute. We find, for the reasons stated hereinabove, a concern with, and relation to, charitable benefactions, as between plaintiffs and the defendant in the present case, not appearing in the cited case, and, therefore, that it is without application to the situation here presented.
While the case necessarily is decided upon the basis of our interpretation of L. 1958, c. 131, which, as we have observed, expired by its own terms on June 30, 1959, it is noted that the provisions of L. 1958, c. 131, quoted herein, were re-enacted by the Legislature, effective June 11, 1959, see N.J.S. 2A:53A-7, 9, 10 (L. 1959, c. 90), and presently represent the statutory law of this State.
Affirmed.