208 N.J. Super. 365 (1986)
506 A.2d 26
CHRISTINE HARRINGTON, PLAINTIFF-APPELLANT,
v.
CLARA MAASS HOSPITAL AND CEREBRAL PALSY CENTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1986.
Decided February 28, 1986.
*367 Before Judges FURMAN, PETRELLA and ASHBEY.
David Gelband argued the cause for appellant (Ned Kirsch, attorney).
Lawrence H. Jacobs, argued the cause for the respondent Clara Maass Hospital (Francis & Berry, attorneys; Jeffrey A. Krompier, on the brief).
Gerald J. Helfrich, argued the cause for the respondent Cerebral Palsy Center (Ryan & Gannon, attorneys; William J. Gannon, of counsel).
The opinion of the court was delivered by FURMAN, P.J.A.D.
Plaintiff and defendant Clara Maass Hospital appeal from summary judgment invoking the bar of charitable immunity, N.J.S.A. 2A:53A-7, in favor of defendant Cerebral Palsy Center. Certification as a final judgment was entered pursuant to R. 4:42-2. We reverse and remand. On the record, in our *368 view, a fact issue of beneficiary status under the statute is not precluded.
Summary judgment was denied to defendant Clara Maass Hospital on the ground of an unresolved fact issue whether plaintiff fell on premises owned or controlled by it. Its premises adjoin those of Cerebral Palsy Center. There is no cross-appeal.
The facts in the light most favorable to plaintiff are as follows. It is not contested that Cerebral Palsy Center is a charitable corporation. On the day of her accident plaintiff accompanied Chris Shaw to the center at his invitation. In her deposition over two years later she referred to him as her "ex-boyfriend." Shaw regularly transported his sister Karen, who suffered from cerebral palsy, to and from the center for out-patient treatment in a van specially equipped with a ramp for her wheel chair. The sparse record does not reveal whether plaintiff had accompanied Chris on that errand on any previous occasion or whether she was a friend of Karen's and, if so, to what extent.
Plaintiff fell in the parking lot outside the Cerebral Palsy Center after Chris Shaw had parked the van, left it and gone inside the center. Plaintiff stepped out of the van with the intention of pulling the ramp down from the back of the van. Allegedly, she slipped on snow and ice and suffered an elbow injury.
N.J.S.A. 2A:53A-7 bars a beneficiary "to whatever degree" of a charitable institution from recovering damages against it for its negligence. According to a proviso of the statute, charitable immunity does not extend to any person "unconcerned in and unrelated to and outside of the benefactions" of the charitable institution. We construe the latter language as amplifying who is barred by charitable immunity, that is, beneficiaries and who is not, that is, nonbeneficiaries; we do not construe it as enlarging the category of those qualifying as beneficiaries to include persons who derive no *369 benefit from the charitable institution but render some service to it or to its beneficiary and thus promote its benefactions. On the appeal before us, plaintiff may have been rendering a service concerned in and related to the Cerebral Palsy Center's benefactions by assisting in transporting home a wheel chair patient. But by itself, in our view, that contribution for the center's benefit does not subject her to N.J.S.A. 2A:53A-7.
We are bound by two rules of construction of N.J.S.A. 2A:53A-7: that it is remedial legislation and should be liberally construed so as to afford immunity, N.J.S.A. 2A:53A-10; and that it should be construed in accordance with pre-statute decisional law defining charitable beneficiaries, Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532 (App.Div. 1962), certif. den. 38 N.J. 305 (1962).
Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), aff'd 110 N.J.L. 508 (E. & A. 1933), is a leading precedent applicable to this appeal. There a mother visiting her daughter, a patient in the hospital, was barred from recovery in negligence under the then common law doctrine of charitable immunity. The language of the lower court opinion, which was not disapproved or questioned by the State's highest court, encompasses as charitable beneficiaries not only close relatives but friends upon a hospital visit to a patient:
To the extent that her need went  that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence  she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. She had no invitation from the defendant, other than was to be implied from the privilege given by the rules of the institution to visit the sick. The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity. In a very real sense the charitable impulses which served the patient served also the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain. [108 N.J.L. 456]
According to the Boeckel analysis, a visitor to a patient derives benefit from a charitable hospital's benefactions: the opportunity to be with the patient and to derive solace from *370 being with her, from the care rendered her, the easing of her suffering and, it may be, her progress towards recovery.
Similarly, in a decision under N.J.S.A. 2A:53A-7 a family member visiting a grave site was held to be a charitable beneficiary, Lawlor v. Cloverleaf Memorial Park, Inc., 106 N.J. Super. 374 (App.Div. 1969). Lawlor was reversed by the Supreme Court in 56 N.J. 326 (1970) on the ground that a privately promoted nonreligious cemetery association is not a charitable institution within the act, without questioning the determination below of beneficiary status. As in Boeckel, although factually a close relative was suing, the court's language defining charitable beneficiaries reaches to friends, as well as relatives, who are comforted by visiting the grave site. At 106 N.J. Super. 387-388, Judge Labrecque wrote:
Here it appears clear to us that Mrs. Lawlor was a beneficiary of the cemetery's "works." It was operated and maintained not only for the reception of bodies for burial but to afford an opportunity for relatives and friends of those buried there to pay their respects and to experience spiritual solace while visiting the last resting place of those dear to them. If Mrs. Lawlor was not a beneficiary, it is difficult to conceive who  except those already interred there  could qualify as such.
Before us, plaintiff relies upon Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313 (App.Div. 1961), aff'd in part and rev'd in part 38 N.J. 549 (1962), and Sommers v. Union Beach First Aid Squad, 139 N.J. Super. 425 (App.Div. 1976), in urging reversal of summary judgment against her. In Mayer, plaintiff was an employee of Development Corporation of Israel, promoting the sale of bonds on defendant's premises. The Supreme Court held that, even assuming his employer was a beneficiary of the religious center's benefactions, plaintiff was there in the exclusive role of serving his employer's business interests and not "for the purpose of receiving personally the philanthropy of the Center." He was a stranger to the charity and not barred under N.J.S.A. 2A:53A-7.
In Sommers, a daughter, whose mother had been transported shortly before in defendant first aid squad's ambulance, was on its premises for the purpose of making a financial contribution. *371 Like plaintiff in Mayer, she was excluded from the scope of charitable immunity under the statute. She was conferring a benefit, not receiving one.
The trial judge viewed as immaterial plaintiff's purpose in accompanying Chris Shaw, whether actively to assist him or not. We agree. In granting summary judgment to the center, the trial judge pronounced:
Here plaintiff was herself a friend of the brother of a beneficiary and plaintiff was involved in the transportation of the cerebral palsy patient from the Cerebral Palsy Center.
The issue before us is whether on the record plaintiff was a beneficiary to any degree of Cerebral Palsy Center's benefactions as a matter of law. If she was on the center's premises to render a voluntary benefit, that is, to assist in transporting a patient home, she was not exempt, because of that purpose, from the bar of N.J.S.A. 2A:53-7 unless at that same time she was in no degree a beneficiary of the center, Wiklund v. Presbyterian Church of Clifton, 90 N.J. Super. 335 (Law Div. 1966). As Judge, later Justice, Pashman commented in Wiklund at 339:
The statute in the instant case is clear. Nowhere does it state that a beneficiary of the works of the charity can change his status to that of "one unconcerned in an unrelated to and outside of the benefactions of" same by merely rendering voluntary and uncompensated services to the charity.
To vest plaintiff with beneficiary status, as the trial court held, would require an extension beyond Boeckel and Lawlor unjustified by N.J.S.A. 2A:53-7 or any decisional law. Plaintiff was not a visitor to a patient inside defendant's center; she accompanied her former boyfriend, himself a visitor, but remained outside. There is no showing that plaintiff was a friend in any degree of Karen Shaw, the patient under treatment in the center. Plaintiff does not qualify as a beneficiary vicariously because of her friendship with the patient's brother. Nothing in the record supports the conclusion below that plaintiff partook of or experienced some benefit from defendant center's care and treatment of Karen Shaw or from its benefactions *372 generally, as she waited outside to accompany and, perhaps, to assist her then boyfriend in transporting his sister home.
We reverse summary judgment in favor of defendant Cerebral Palsy Center and remand for further proceedings not inconsistent herewith. We do not retain jurisdiction.