217 N.J. Super. 492 (1987)
526 A.2d 264
SHIRLEY GRAY, PLAINTIFF-APPELLANT,
v.
ST. CECILIA'S SCHOOL, IND., AND AS THE AGENT, SERVANT AND/OR EMPLOYEE OF THE DIOCESE OF CAMDEN COUNTY AND THE DIOCESE OF CAMDEN COUNTY, IND., AND J/S/A, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 5, 1987.
Decided May 13, 1987.
*493 Before Judges O'BRIEN and LANDAU.
Aronberg & Kouser, attorneys for appellant (David S. Kouser, on the brief).
McKernan & McKernan, attorneys for respondents (Martin F. McKernan and James J. Godino, Jr., on the brief).
The opinion of the court was delivered by LANDAU, J.S.C. (temporarily assigned).
Plaintiff-appellant Shirley Gray appeals from a summary judgment granted in favor of defendants-respondents St. Cecilia's School and Diocese of Camden. The appeal raises the question whether a mother, injured on the premises of her son's parochial school when she came to pick him up after classes ended, was a "beneficiary, to whatever degree" of its works at the time of the accident, under N.J.S.A. 2A:53A-7. We conclude that Mrs. Gray falls within the statute, and affirm.
*494 It is not disputed that Gray was on the premises only to transport her son from school, that she and her son are Roman Catholic, that defendants qualify as non-profit religious and educational organizations for purposes of the statute, and that the son was a beneficiary of their works.
Prior to the legislative response to the Collopy trilogy,[1] cases construing common law charitable immunity tended to reflect the disfavor in which the doctrine was held in many jurisdictions. The doctrine was narrowly applied to beneficiaries although it was recognized that one could be an indirect beneficiary. See, e.g., Boeckel v. Orange Mem'l. Hosp., 108 N.J.L. 453 (Sup.Ct. 1932), aff'd 110 N.J.L. 509 (E. & A. 1933); compare, Rose v. Raleigh Fitkin, etc., 136 N.J.L. 553 (E. & A. 1947). Distinguishing factors were explained by the Court of Errors and Appeals in Simmons v. Wiley M.E. Church, 112 N.J.L. 129, 132 (E. & A. 1933):
... in the Boeckel case the court stressed the relationship of the plaintiff (a mother visiting her daughter patient) to the hospital as that of a beneficiary receiving the same general class of advantage as the patient herself, bringing the visitor also within the class of direct recipients of the charity's beneficence, an acceptor of its benefactions, and thus equally subject to the same risks of negligence as a patient would be under the law, grounded on public policy, and with painstaking clarity disassociated the plaintiff in that case from the status of a complete stranger to the hospital's charity.
As we observed in Harrington v. Clara Maass Hosp., 208 N.J. Super. 365, 369 (App.Div. 1986):
We are bound by two rules of construction of N.J.S.A. 2A:53A-7; that it is remedial legislation and should be liberally construed so as to afford immunity, N.J.S.A. 2A:53A-10; and that it should be construed in accordance with pre-statute decisional law defining charitable beneficiaries, Anasiewicz v. Sacred *495 Heart Church, 74 N.J. Super. 532 (App.Div. 1962), certif. den. 38 N.J. 305 (1962).
Since the statute was enacted, varying fact patterns have been considered by the courts in construing N.J.S.A. 2A:53A-7. See, e.g., Lawlor v. Cloverleaf Mem'l. Park, Inc., 106 N.J. Super. 374 (App.Div. 1969), rev'd on other grounds, 56 N.J. 326 (1970); Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313 (App.Div. 1961), aff'd in part and rev'd in part, 38 N.J. 549 (1962); Sommers v. Union Beach First Aid Squad, 139 N.J. Super. 425 (App.Div. 1976); Wiklund v. Presbyterian Church of Clifton, 90 N.J. Super. 335 (Law Div. 1966); Heffelfinger v. Town of Morristown, 209 N.J. Super. 380 (Law Div. 1985). The cases generally are resolved by considering whether the person injured was, at the time of accident, to some degree within the benefaction of the charity.
Legislative intent to interpret broadly the response to this consideration is shown by the modifying words, "to whatever degree" used in the statute after the word "beneficiary" and by the description of a person not subject to immunity as "... one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association ..." N.J.S.A. 2A:53A-7.
Although Gray did not come to St. Cecilia's to pray on the date of the accident, or even to discuss her child's educational progress or to view a school play, her presence was clearly incident to accomplishment of a purpose of her own, to insure that her child should receive the benefits of a Catholic school education, rather than the secular education otherwise provided by government. In this regard, Gray, a Catholic, was not "unconcerned in" or "unrelated to" or "outside" the benefaction of the school and the diocese which provided the location and means to accomplish this purpose. See, Heffelfinger, 209 N.J. Super. at 390.
Affirmed.
NOTES
[1] Collopy v. Newark Eye & Ear Infirmary, 27 N.J. 29 (1958); Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), and Benton v. Y.M.C.A., 27 N.J. 67 (1958), abolished the doctrine of charitable immunity as a common law principle in New Jersey. Shortly thereafter the Legislature enacted N.J.S.A. 2A:53A-7 as part of L. 1959, c. 90, thereby creating a statutory immunity for most charitable enterprises.