290 N.J. Super. 479 (1996)
676 A.2d 152
LAMBERT DeVRIES AND ALICE S. DeVRIES, HUSBAND AND WIFE, PLAINTIFFS-RESPONDENTS,
v.
HABITAT FOR HUMANITY, DEFENDANT-APPELLANT, AND RUTHERFORD CONGREGATIONAL CHURCH, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1996.
Decided May 17, 1996.
*481 Before Judges KING, LANDAU and KLEINER.
John F. Gaffney argued the cause for appellant (Smetana & Mahoney, attorneys; Mr. Gaffney, on the brief).
Mariangela Chiaravallotti argued the cause for respondents (Lewis & McKenna, attorneys; Ms. Chiaravallotti, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.

I.
Defendant Paterson Habitat for Humanity (Habitat) appeals on leave granted from the denial of its motion for summary judgment in a suit brought by a volunteer who was injured while working on a Habitat construction project. Habitat contends that it is entitled to immunity under the charitable immunity statute, N.J.S.A. 2A:53A-7. We conclude that a volunteer worker who conferred a benefit on Habitat and received no benefit in return other than personal satisfaction was not a "beneficiary" under N.J.S.A. 2A:53A-7 and is entitled to bring a tort action.

II.
Lambert DeVries and his wife filed suit against defendants Rutherford Congregational Church and Habitat, claiming that he had been injured while working as a volunteer on a Habitat construction project. The church obtained a voluntary dismissal because it did not own the property under construction.
*482 Defendant Habitat claimed immunity from liability under N.J.S.A. 2A:53A-7 and moved for summary judgment. Judge Hamer denied Habitat's summary judgment motion, finding that DeVries was not "a direct beneficiary" of Habitat. We granted Habitat's motion for leave to appeal. R. 2:2-4.
Plaintiff is a retired telephone company employee who first learned of Paterson Habitat For Humanity in the spring of 1991. While attending a church service, he heard that Habitat was seeking volunteer workers. He reported to a Habitat construction site the following Saturday and assisted in the yard clean-up of a completed unit. While there, he discovered that a group of volunteers usually assembled on Wednesdays to work on a house still under construction. He volunteered his services on most Wednesdays and a few Saturdays until construction on that house was completed. Later, he volunteered for another construction project. In all, he did volunteer construction work for Habitat fairly consistently for over a year.
On October 21, 1992 plaintiff reported to work on a project at 39 Stout Street in Paterson. He was told to perform electrical work on the second floor of a unit. There was no floor or ceiling dividing the levels and he had to climb a ladder to the second floor. He was holding onto a board when it separated from the wall as he climbed down the ladder. He fell about fourteen feet to the basement, landed on his back, and suffered serious injuries.
Habitat is a nonprofit corporation, organized for these purposes, according to its certificate of incorporation:
(1) To implement the gospel of Jesus Christ in the world working with economically disadvantaged people to help them create a better human habitat in which to live and work.
(2) To help poor but financially stable families obtain simple, adequate and easily affordable owner-occupied housing, using low down payments, sweat equity and no-interest mortgages.
(3) To aid Christians and others by providing them with opportunities to volunteer their time and efforts and with practical and effective ways to share their abundance to meet the needs of others in response to God's command.
(4) To generally promote and advance religious and charitable, social and educational purposes.

*483 (5) To engage in any activities within the purposes for which a nonprofit corporation may be organized under Title 15A of the New Jersey Statutes, so long as such activities shall be consistent with the purposes, goals and Bylaws of the Corporation and consistent with law.

III.
Many state courts, including New Jersey's, developed a common-law charitable immunity doctrine in the early part of this century. Today, nearly every state has renounced or severely limited this common-law doctrine. Several states still grant at least partial immunity to charitable organizations, sometimes through statute. See Note, The Quality of Mercy: "Charitable Torts" and their continuing Immunity, 100 Harv. L.Rev. 1382 (1987).
New Jersey's common-law charitable immunity doctrine was judicially abolished in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 141 A.2d 276 (1958); Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 141 A.2d 273 (1958); and Benton v. Y.M.C.A., 27 N.J. 67, 141 A.2d 298 (1958). Soon after these decisions, the New Jersey Legislature enacted a statute, ultimately codified as N.J.S.A. 2A:53A-7, which granted a limited immunity from liability to certain nonprofit corporations. The statute provides:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents of servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association, but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence.
[Emphasis supplied.]
N.J.S.A. 2A:53A-10 provides that the statute "shall be liberally construed so as to afford immunity ... in furtherance of the public *484 policy for the protection of" charitable organizations. But this grant of immunity was intentionally limited. These organizations are still liable for injuring anyone "unconcerned in and unrelated to and outside of the benefactions of" the nonprofit entity. A more recent statute, N.J.S.A. 2A:53A-7.1, L. 1987, c. 87, § 1, grants absolute or unconditional immunity from tort liability to most persons performing work for a charitable or non-profit organization  unpaid officers, directors, trustees and members, as well as volunteer workers  unless their behavior is wilful, wanton, or grossly negligent. There is, of course, no statute which gives a charitable organization immunity to suits brought by volunteer workers who serve the charity's goals.
Since the parties do not dispute that Habitat is a "nonprofit corporation, society, or association organized exclusively for religious, charitable, educational or hospital purposes," the single issue is whether plaintiff, a volunteer laborer on a construction project, was "a beneficiary, to whatever degree, of the works" of Habitat or was "outside of the benefactions" of the organization.
Plaintiff did not expect the benefit of low-cost housing provided by Habitat. Defendant Habitat argues that plaintiff is, nevertheless, a beneficiary of the organization and urges us to look to the purposes expressed in its certificate of incorporation  "to aid Christians and others by providing them with opportunities to volunteer their time and efforts ..." and "to generally promote and advance religious and charitable, social and educational purposes"  and to conclude that volunteer workers like plaintiff are intended beneficiaries of the organization.
We do not find the corporate purposes enumerated in the certificate of incorporation dispositive of whether an individual is a beneficiary under the statute. Were this the test, every non-profit corporation could unilaterally insulate itself from tort liability merely by setting forth a comprehensive list of beneficiaries sufficiently broad to include all possible claimants. A more objective and less self-serving interpretation of the scope of the "benefactions" of a charity is required.
*485 "[A] purpose set forth in a certificate of incorporation is not conclusive as to whether an organization is in fact a charitable one." Allen v. Summit Civic Found., 250 N.J. Super. 427, 431, 594 A.2d 1361 (Law Div. 1991). Likewise, a certificate of incorporation is not conclusive on whether a particular individual is a beneficiary of that organization. While considering an organization's stated purpose is useful as a factor in the beneficiary determination, we decline to treat it as the talisman by which claimants are within or outside a particular organization's benefactions.
We think it equally true that plaintiff's subjective motivations should not control determination of status as a beneficiary under the statute. In Peacock v. Burlington County Historical Society, 95 N.J. Super. 205, 230 A.2d 513 (App.Div.), certif. denied, 50 N.J. 290, 234 A.2d 399 (1967), the plaintiff accompanied her husband to the society's library solely for the purpose of companionship, glanced at some of the exhibits to pass the time, and was injured when she tried to sit in a chair which slipped beneath her. We held that she was a beneficiary, despite her subjective belief that she did not derive a benefit from the library.
Plaintiff's personal motivations are not the test, even when those motivations match a stated purpose in the organization's certificate of incorporation. A more objective standard is required. The test generally should be whether the injured person was at the time bestowing benefactions upon the charity or receiving them. In the case before us, plaintiff testified that he volunteered his services because "[i]t sounded like a worthwhile charitable organization that you could help accomplish something." He stated that he "had a good home" himself and "felt other people should be entitled to one, and if I could help them get it as a charitable or Christian duty, I felt it would be a good thing to do." For his efforts, he said he received the benefit of "personal satisfaction."
Habitat attempts to convince us that, because plaintiff acknowledged receiving certain spiritual or psychological benefits articulated in the certificate of incorporation, he was a beneficiary *486 barred from bringing suit. Indeed, at oral argument, counsel for defendant agreed that the statute would not provide immunity for Habitat from suit by a less altruistic volunteer worker whose sole professed motivation was to make business or social contacts, learn marketable construction skills, or participate in a diverting day's outing. We decline to adopt a principle of statutory interpretation for this statute based primarily on the subjective motivation of each individual volunteer. Apart from the fact that this rewards the selfish and penalizes the saintly, as a practical matter the rule is almost impossible to administer.
Though the common-law charitable immunity doctrine was abolished in this State, the wording of the statute demonstrates that "the Legislature did not intend to expand, modify, or alter in any way the span of the pre-existing immunity." See Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 535, 181 A.2d 787 (App.Div.), certif. denied, 38 N.J. 305, 184 A.2d 419 (1962). "Significantly, the verbiage employed closely parallels the language of the cases in which the immunity rule was enunciated." Ibid. (citing Lindroth v. Christ Hospital, 21 N.J. 588, 592-93, 123 A.2d 10 (1956)). Thus, cases discussing whether individuals should be considered beneficiaries are applicable whether decided before or after the adoption of the present statute in 1959. Though this court in Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313, 177 A.2d 40 (App.Div. 1961), expressed the opinion that Collopy "eliminated the existing decisional law referable to the charitable immunity doctrine," id. at 319, 177 A.2d 40, the Supreme Court evidently disagreed. The Supreme Court upheld our conclusion that plaintiff was not within the benefactions of the Center but cited cases decided as far back as 1909 in support of its decision. Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 554, 186 A.2d 274 (1962).
Our Supreme Court has explained that the public policy behind the charitable immunity doctrine is to avoid diverting funds away from a charity's mission "`where the injured party participates in the charity's largesse.'" Lindroth v. Christ Hospital, 21 N.J. 588, *487 595, 123 A.2d 10 (1956) (quoting Daniels v. Rahway Hospital, 10 N.J. Misc. 585, 588, 160 A. 644 (C.P. 1932)). See also Jones v. St. Mary's Roman Catholic Church, 7 N.J. 533, 536-37, 82 A.2d 187, cert. denied, 342 U.S. 886, 72 S.Ct. 175, 96 L.Ed. 664 (1951) ("... it would be contrary to the interests of society that funds dedicated to a charitable use be permitted to be diverted or diminished by the payment of judgments ... where suit is instituted by the beneficiary of the charity").
The Lindroth Court considered whether a doctor who treated needy patients in exchange for the use of hospital facilities to perfect a new surgical procedure was a beneficiary of the hospital. When considering whether a charity is immune from liability to a particular person, the Court said, "the inquiry is whether the injured person was at the time of the mishap `a beneficiary of the charity in the legal sense' or `a stranger to the charity.'" Lindroth, supra, 21 N.J. at 592, 123 A.2d 10 (quoting Rose v. Raleigh Fitkin-Paul Morgan, etc., Foundation, 136 N.J.L. 553, 556, 57 A.2d 29 (E. & A. 1948)). The test for differentiating a beneficiary from a stranger "leans heavily upon the element whether the suitor is one of the `direct recipients of the charity's beneficence, an acceptor of its benefactions' whose mishap occurs in the course of" the organization's charitable work. Lindroth, supra, 21 N.J. at 595, 123 A.2d 10 (quoting Daniels v. Rahway Hospital, 10 N.J. Misc. 585, 588, 160 A. 644 (C.P. 1932)). The Lindroth Court held that the plaintiff doctor was not a beneficiary because his "connection with the defendant hospital is not primarily as a recipient of the benefits of the hospital's mission, but rather that of a person who importantly contributed to the furtherance of that mission." Ibid.
Lindroth is the only case in which our Supreme Court directly addressed the standard controlling who should be considered within the benefactions of a charitable organization. Lindroth appears to establish a clear two-part test for determining whether an individual is a beneficiary  (1) did the injury occur *488 while the organization was engaged in its charitable works, and (2) was the injured party a direct recipient of those works.
Not all appellate and trial courts since Lindroth have followed this model. Courts addressing the beneficiary question tend to follow one of the two appellate cases which first addressed the beneficiary question under the statute  Anasiewicz, supra, 74 N.J. Super. 532, 181 A.2d 787, or Mayer v. Fairlawn Jewish Center, 71 N.J. Super. 313, 177 A.2d 40 (App.Div. 1961), aff'd in part and rev'd in part on other grounds, 38 N.J. 549, 186 A.2d 274 (1962). Anasiewicz and Mayer differ in their approach to the question; subsequent cases tend to follow one or the other. The Anasiewicz line looks to whether the organization was engaged in its charitable work at the time of the injury; the Mayer line also looks to whether any benefit flowed to the individual plaintiff from the organization's charitable works.
In Anasiewicz, the plaintiffs, "professors of the Roman Catholic faith, but not members of the [defendant] Sacred Heart parish," were guests at a wedding performed at the defendant church; while leaving the church, plaintiff wife slipped and fell on ice which had accumulated on the church steps. Anasiewicz, supra, 74 N.J. Super. at 533-34, 181 A.2d 787. This court addressed the then-new statute and reasoned that "the Legislature intended the language of the act to be construed in light of stare decisis" concerning the common-law charitable immunity doctrine, id. at 536, 181 A.2d 787, and noted, in particular, the parallel between the language of the statute and the doctrine described in Lindroth. Id. at 535, 181 A.2d 787. The Anasiewicz court concluded, however, that under the common law:
the determination of whether one was a "beneficiary of the works" of a charitable institution did not depend upon a showing that the claimant personally received a benefit from the works of the charity. Rather, the ratio decidendi was whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance.
[Id. at 536, 181 A.2d 787.]
*489 Because the church was engaged in its religious charitable objectives, this court found that the wedding-guest plaintiff was "concerned in, related to, and within the benefactions of the church." Id. at 537, 181 A.2d 787.
The Anasiewicz court did not address the Lindroth Court's holding or its two-prong standard. Rather, Anasiewicz relied exclusively on two cases from the 1930s  Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453, 456, 158 A. 832 (Sup.Ct. 1932), where a mother who was injured while visiting her daughter, a patient at defendant hospital, was found a beneficiary because the opportunity afforded for her attendance was part of the hospital's charitable service, and Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 8 A.2d 567 (E. & A. 1939), where a Girl Scout, not a member of the church but injured while attending a scout meeting on church property was found a beneficiary. The Anasiewicz court pointed out that these two decisions favored the philosophy that the performance of charitable works benefits the community as a whole. Anasiewicz, supra, 74 N.J. Super. at 537, 181 A.2d 787. The court apparently failed to recognize, however, that Lindroth considered both Boeckel and Bianchi, as well as numerous other cases, and held that both the organization's activities and the plaintiff's supposedly derived benefit must be considered.
Citing Anasiewicz, other cases have not gone beyond the question of whether an organization was engaged in its charitable work when the injury occurred. See, e.g., Rupp v. Brookdale Baptist Church, 242 N.J. Super. 457, 464, 577 A.2d 188 (App.Div. 1990) (holding that a child, injured while attending a church day camp, was a beneficiary even though his parents were not members of the church and claimed that they were unaware of the day camp's religious goals; "the Church, through the Adventure Day Camp, was actively engaged in the pursuit of religious, charitable and educational goals"); Pomeroy v. Little League Baseball of Collingswood, 142 N.J. Super. 471, 475, 362 A.2d 39 (App.Div. 1976) (holding that a spectator enjoying a Little League game was a *490 beneficiary and not conferring a benefit when "defendant was engaged in the performance of the charitable objectives it was organized to advance"); Peacock v. Burlington County Historical Society, supra, 95 N.J. Super. at 208, 230 A.2d 513 (holding the Society immune from suit by plaintiff who casually viewed some exhibits, and explaining, "We think that the emphasis should be placed upon defendant's Works, i.e., the maps and exhibits provided by it which this plaintiff, for whatever reason, and however casually, elected to examine or view"). See also Gray v. St. Cecilia's School, 217 N.J. Super. 492, 526 A.2d 264 (App.Div. 1987) (holding that a woman who was injured when she went to pick up her child, a student at a parochial school, was to some degree within the benefaction of the charity).
Anasiewicz and its progeny, by their reasoning, appear to stand for the proposition that the only relevant question is whether the organization was engaged in its charitable purpose when the plaintiff's injury occurred. If this reasoning is followed to its logical conclusion, however, then even a pedestrian passing near a Habitat construction site and injured by a falling hammer would be barred from recovery; a passerby hit by a ball from a Little League game would be barred from recovery; and a person injured while walking past a church where a service was in progress would be unable to recover, even though not a member of the church, not a resident of the community, and unaware that a church's sidewalk was traversed. Such results contravene the clear intent of the statute that those "outside the benefactions" of the organization be allowed to recover. While N.J.S.A. 2A:53A-10 requires that the charitable immunity statute be liberally construed, any liberal construction necessarily must leave a portion of the public "unconcerned in and unrelated to and outside of the benefactions" of the organization.
Other cases have looked not only to whether the organization was engaged in a charitable purpose but also to the second prong of the Lindroth test  whether the plaintiff received any benefit from the charity. Mayer and its progeny consider the individual *491 relationship between the plaintiff and the charitable organization in ruling on beneficiary status. The plaintiff in Mayer was the regional director of a corporation engaged in selling bonds for the economic development of Israel. The development corporation arranged a dinner at the Fairlawn Jewish Center (Center) to sell bonds. Though the Center did not charge a rental fee for the use of the facility, it received a portion of the price of each ticket sold "for a kitchen charge." Mayer, supra, 71 N.J. Super. at 316, 177 A.2d 40. Plaintiff fell in a dark stairwell and was injured. The Center claimed charitable immunity. We held that plaintiff was outside of the benefactions of the Center because he was not a member of the Center or the religious community and "[h]is attendance at the Center building on the night of the accident was in the performance of his job for his employer and not as a recipient of [the] Center's beneficence or philanthropy." Id. at 321, 177 A.2d 40. The Supreme Court reversed in part on other grounds, but agreed with our conclusion on the beneficiary issue, emphasizing that plaintiff's "rights so far as the statutory immunity is concerned depended upon his own individual relation with the Center." Mayer, supra, 38 N.J. at 553-54, 186 A.2d 274.
In Harrington v. Clara Maass Hospital, 208 N.J. Super. 365, 506 A.2d 26 (App.Div. 1986), the plaintiff went to the Cerebral Palsy Center with a friend who regularly assisted in the transport of his sister, disabled from that illness. Plaintiff remained in the parking lot and, while extracting a wheelchair-ramp from the van, slipped and fell on ice. We held that she was not a beneficiary, looking to whether any benefits actually flowed to her. We considered the statutory language that charitable immunity did not extend to any person "unconcerned in and unrelated to and outside of the benefactions" of the charitable organization, and said:
We construe the [] language as amplifying who is barred by charitable immunity, that is, beneficiaries and who is not, that is, nonbeneficiaries; we do not construe it as enlarging the category of those qualifying as beneficiaries to include persons who derive no benefit from the charitable institution but render some service to it or to its beneficiary and thus promote its benefactions. On the appeal before us, plaintiff may have been rendering a service concerned in and related to the *492 Cerebral Palsy Center's benefactions by assisting in transporting home a wheel chair patient. But by itself, in our view, that contribution for the center's benefit does not subject her to N.J.S.A. 2A:53A-7.
[Id. at 369, 506 A.2d 26.]
Several other of our cases have held that no immunity existed where, rather than receiving a benefit, plaintiff actually conferred one. In Sommers v. Union Beach First Aid Squad, 139 N.J. Super. 425, 354 A.2d 347 (App.Div. 1976), we stated that the "controlling test" was whether the organization was engaged in its charitable activity and "whether plaintiff then was truly a beneficiary thereof." Id. at 431, 354 A.2d 347. The plaintiff in Sommers slipped and fell on the ice while crossing the Squad's parking lot to donate money in gratitude for its recent service to her mother. We rejected as overbroad the contention that plaintiff received a benefit because she was a member of the community served by the Squad and might someday avail herself of its services, id. at 430, 354 A.2d 347, and noted, "Plaintiff was not receiving any benefit from defendant Squad at the time of the occurrence. Indeed, she was conferring a benefit." Id. at 432, 354 A.2d 347. See also, Manley v. YMCA of Plainfield, 275 N.J. Super. 656, 660, 646 A.2d 1163 (Law Div. 1994) (welfare recipient performing workfare was injured while working for the YMCA; the court stated that "[p]ermitting someone to perform labor free of charge, as a condition to receiving welfare benefits, cannot by any stretch of the imagination equate with the plaintiff himself receiving a benefit from the YMCA ... it was the plaintiff who was rendering a benefit to the defendant, not the other way around"); Beicht v. American Polish Veterans, Inc., 259 N.J. Super. 79, 80, 611 A.2d 168 (Law Div. 1992) (a bride who slipped and fell in a rented hall was not within the benefactions of the charity; "to be a beneficiary, to whatever degree, of a charitable organization, the plaintiff must, in some way, be benefiting from its functioning in a religious or charitable or educational or hospital undertaking"). See also Kasten v. Y.M.C.A., 173 N.J. Super. 1, 7, 412 A.2d 1346 (App.Div. 1980) (holding that plaintiff, not a Y.M.C.A. member, was not a beneficiary because she paid to use for-profit ski-facilities run by *493 the charity). Accord Book v. Aguth Achim Anchai of Freehold, 101 N.J. Super. 559, 245 A.2d 51 (App.Div. 1968), and Jewell v. St. Peter's Parish, 10 N.J. Super. 229, 76 A.2d 917 (Cty.Ct. 1950) (the "bingo" cases, where the general public is invited to pay and play and the profit goes into the general coffers of the church or synagogue). The second prong of the Lindroth test  whether the plaintiff receives a benefit  must also be evaluated before a court can decide whether an individual is within or outside the benefactions of the organization.
In Lindroth, though plaintiff took advantage of the hospital's facilities to develop his new surgical technique, in exchange, he dedicated his services to the hospital and its poorer patients that led our Supreme Court to conclude that, on balance, the hospital was benefitted by the relationship, not the reverse. Id., supra, 21 N.J. at 595, 123 A.2d 10. The case before us is quite similar to Lindroth analytically. Plaintiff was a volunteer worker whose only connection to Habitat was the significant service he provided, during which he was conferring a benefit rather than receiving one. Free labor was certainly of similar economic benefit to the charitable organization as plaintiff's cash contribution to the rescue squad in Sommers.
Plaintiff conferred a significant benefit on defendant and received intangible personal satisfaction in return. Objectively, we cannot say that he was a statutory beneficiary, despite the benevolent impulses which prompted his bestowal of benefactions upon others. Defendant was not entitled to immunity under N.J.S.A. 2A:53A-7.
Affirmed.